**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-13-00100-CV**

_____

**IN RE COMMITMENT OF JOHN JAMES SMITH JR.**

**On Appeal from the 435th District Court**
**Montgomery County, Texas**
**Trial Cause No. 12-05-04918 CV**

**OPINION**

The State of Texas filed a petition to civilly commit John James Smith Jr. as a sexually violent predator under the Sexually Violent Predator Act. *See* Tex. Health & Safety Code Ann. §§ 841.001–.151 (West 2010 & Supp. 2013) (the SVP statute). A jury found Smith suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. *See id.* § 841.003. The trial court entered a final judgment and an order of civil commitment under the Act. We affirm the judgment of the trial court.

1

Smith argues on appeal that the trial court committed three reversible errors. In his first issue, Smith argues that the trial court committed reversible error by denying his motion to allow his attorney to attend a psychiatric examination conducted by the State's expert. In his second issue, Smith argues the trial court denied Smith's right to ask a proper commitment question during jury selection. In his third issue, Smith argues the trial court denied Smith's right to cross-examine the State's expert witness regarding fees paid in prior civil commitment proceedings.

RIGHT TO COUNSEL

A person subject to a civil commitment proceeding under the SVP statute "is entitled to the assistance of counsel at all stages of the proceeding." Tex. Health & Safety Code Ann. § 841.144 (a). This statutory right to counsel attaches immediately after the filing of a petition. *Id.* The State filed its petition on May 7, 2012. Two days later, the trial court appointed an attorney with the office of State Counsel for Offenders to represent Smith and granted the State's motion for a psychiatric examination of Smith. That same day, through counsel of record, Smith filed a document asserting the exercise of Smith's right to counsel. Among other matters that have not been advanced on appeal, Smith requested that counsel be present during the State's psychiatric examination of Smith. On appeal, he

2

contends the trial court's failure to permit counsel to personally attend the psychiatric examination violated his statutory right to counsel under the SVP statute and his constitutional right to due process under the Fourteenth Amendment.

First, we consider whether Smith has a statutory right to have his attorney present with him during the psychiatric examination. The person and the State "are each entitled to an immediate examination of the person by an expert." *Id.* § 841.061(c). "A person who is on trial to determine the person's status as a sexually violent predator is required to submit to all expert examinations that are required or permitted of the state to prepare for the person's trial." *Id.* § 841.061(f). Smith was represented by counsel when the psychiatric examination occurred, but he argues "assistance of counsel at all stages of the proceeding" means attendance by counsel at the examination. *See id.* § 841.144(a).

To support his argument, Smith cites a dissenting opinion in a case concerning a physical examination in breast implant litigation. *See Simmons v. Thompson*, 900 S.W.2d 403, 404 (Tex. App.—Texarkana 1995, orig. proceeding) (Grant, J., dissenting). The dissenting justice reasoned that "the adversarial status of the examining doctor is a compelling reason to permit attendance by counsel to prevent improper questioning on liability issues and to observe possible

3

shortcomings and improprieties in the examination." *Id*. The majority held that "the right to have one's attorney present at a physical examination ordered pursuant to Rule 167a is a matter to be determined within the discretion of the trial court on a case-by-case basis according to evidence showing a particularized need therefor." *Id.*; *see also* Tex. R. Civ. P. 204. The relator in *Simmons* produced no facts showing a need for her attorney to be present. *Simmons*, 900 S.W.2d at 404. In this appeal, Smith does not explain why his counsel could not adequately advise Smith and protect his rights without being physically present during the psychiatric examination. Smith does not cite this Court to an objection to any testimony by the examining psychiatrist about his interview with Smith. Smith identifies no improprieties that occurred during the examination, he identifies no testimony by the examining psychiatrist that would not have been obtained if counsel had been present, and he fails to explain why any concerns could not have been addressed through motions or objections made before or during the trial. Instead, Smith contends counsel's absence from the examination is a denial of counsel for which reversal should be automatic as it is in situations where the trial court allows counsel to voluntarily withdraw two days before trial and withhold the client's papers and files. *See Villegas v. Carter*, 711 S.W.2d 624, 626-27 (Tex. 1986).

4

Smith cites cases from other jurisdictions, which he contends enforced a right to the presence of counsel at a compelled psychiatric examination conducted after civil commitment proceedings commenced. *See In the Matter of State of New York v. Soto*, 860 N.Y.S.2d 725 (Sup. Ct., Bronx County 2008); *In re Det. of Kistenmacher*, 178 P.3d 949 (Wash. 2008). The issue in *Soto* was not whether Soto's counsel could attend the examination, but whether the State's attorney could attend the examination by the State's expert. *See Soto*, 860 N.Y.S.2d at 726. The State's attorney wished to attend as an observer and videographer of the examination. *Id.* Soto argued the statute provided only for a written report. *Id.* Although the statute in question was silent as to whether counsel for either party may attend the examination, the court noted that counsel for the person being examined was allowed to attend interviews in involuntary commitment cases and criminal cases where the insanity defense was at issue. *Id.* at 727-28 & n.5. The court reasoned fundamental fairness required a full and fair opportunity for both sides to prepare for trial, and permitted the State's attorney to attend the examination. *Id.* at 729-30.

In *Kistenmacher*, the Washington Supreme Court held the statutory right to assistance of counsel in a sexually violent predatory commitment case extends to a precommitment psychological examination. 178 P.3d at 953. Because only three

events in the sexually violent predator statute could be considered "proceedings"— the probable cause determination, the psychological examination, and the trial— the court distinguished commitment cases from parental-rights termination cases and held the commitment statute gave the person a statutory right to counsel at his psychological examination. *Id.* Kistenmacher had counsel but the State failed to notify counsel of the examination before it occurred. *Id.* The court held the error was harmless, because Kistenmacher had no right to remain silent during the examination and he failed to identify any information obtained in the clinical examination that was not available from the records the doctor reviewed or from Kistenmacher's deposition. *Id.* Kistenmacher made the same inculpatory admissions in his psychological examination that he made in his deposition with counsel present. *Id.* at 954. On appeal he failed to show that the doctor's testimony would have been different if his lawyer had been present at the examination. *Id.*

Like the New York and the Washington statutes, under the Texas statute a person has a right to counsel when the examination occurs, but the statute does not specify whether counsel may personally attend the examination. *See* Tex. Health & Safety Code Ann. §§ 841.061, 841.144. The cases from other jurisdictions do little to inform our construction of the Texas statute, or to explain why Smith was

6

harmed because his attorney was not present during the examination. Smith's counsel had notice of the examination and Smith cites no Texas authority for requiring the trial court to allow counsel to personally attend a psychiatric examination in other civil and criminal proceedings. *See, e.g., Purtell v. State*, 761 S.W.2d 360, 374 (Tex. Crim. App. 1988) (A defendant does not have a right to counsel's personal attendance at a competency examination in a criminal case.); *Stultz v. State*, 500 S.W.2d 853, 854 (Tex. Crim. App. 1973) (Where the insanity defense is at issue, a defendant does not have a right to counsel's personal attendance at a mental examination.). Furthermore, Smith concedes that the Texas SVP statute defines "'[c]ivil commitment proceeding'" as a "trial or hearing'" under three subchapters of the SVP statute, and does not appear to encompass a pre-trial psychiatric examination. *See* Tex. Health & Safety Code Ann. § 841.002(3-a).

Smith argues the statute must yield to his right to counsel as a matter of federal constitutional law. Determining what process is due in a particular proceeding requires consideration of three factors: (1) the private interest affected by the proceeding or official action; (2) the countervailing governmental interest supporting use of the challenged proceeding; and (3) the risk of an erroneous deprivation of that interest due to the procedure used. *Mathews v. Eldridge*, 424

7

U.S. 319, 335 (1976). Smith does not challenge the State's statutory right to an examination. *See* Tex. Health & Safety Code Ann. § 841.061(c). The psychiatric examination is not a deposition conducted for the purpose of discovering Smith's testimony; rather, the examination assists the expert in assessing whether the person has a psychiatric diagnosis that validly informs the expert's professional opinion on whether the person has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. Both the person and the State have a strong interest in ensuring the integrity of the interview and the opinions formed from it. Counsel would, if present, presumably be able to observe any impropriety that might form the basis for an objection to the expert's testimony at trial, but counsel's presence during the interview might disrupt the examination and limit the effectiveness of the interview from a medical standpoint. The risk of an erroneous deprivation of a person's interest in a valid examination is lessened because the expert is subject to being deposed and any evidence that might lead to the suppression of the expert's opinion testimony could be discovered in that process and could form the basis for an objection to the expert's testimony at trial. Smith does not explain how counsel's absence during the psychiatric examination either invalidated the examination or precluded Smith from challenging the expert's testimony at trial. Moreover, when the psychiatric examination occurred,

8

Smith was represented by counsel and had prior notice of the examination. Smith has not shown that he was denied counsel.

We conclude that neither the SVP statute nor the Fourteenth Amendment require that counsel be present during a psychiatrist's post-petition examination. We overrule issue one.

COMMITMENT QUESTION

In issue two, Smith contends the trial court disallowed a proper commitment question. We review the trial court's ruling for abuse of discretion. *In re Commitment of Hill*, 334 S.W.3d 226, 229 (Tex. 2011). "[A] court abuses its discretion when its denial of the right to ask a proper question prevents determination of whether grounds exist to challenge for cause or denies intelligent use of peremptory challenges." *Babcock v. Nw. Mem'l Hosp.*, 767 S.W.2d 705, 709 (Tex. 1989).

Smith's counsel explored the jury's attitudes about pedophilia, then without objection, asked a series of questions, including the following:

- So if I were to tell you that this case involved pedophilia, do you feel you could be fair and impartial if you were to sit in that jury box?

- So for example say if he were convicted of two prior offenses sexual offenses involving pedophilia, you wouldn't have to listen to any evidence to determine whether or not he had a behavioral abnormality, [your] mind would already be made up?

- I'm going to play the repeat game, so you wouldn't hold the State to the burden of having to prove up that my client has a behavioral abnormality if you heard that my client has two prior sexual offenses involving pedophilia, that would be enough?

- Who here hears sex offender, pedophilia and wants to take a sex offender and drop them in a hole and walk away? In other words, in prison, lock away the key for life.

- If you were to hear about my client being in prison, currently in prison, would that be enough for you to say I don't need to hear any evidence from the State about a behavioral abnormality, about two prior sexual convictions, the fact that he is in prison means he must have a behavioral abnormality[?]

The trial court sustained the State's objection to one question as an improper commitment question, as follows:

> I want to know if a person has, and you can just raise your card [if] you agree with me on some of these statements, if an individual has five prior sex offenses, do you feel you could sit and be fair and impartial as a juror in that trial? And this is hypothetically, this isn't Mr. Smith. If a person has five prior sex offenses, do you feel you would be fair and impartial and unbiased toward him and listen to all the evidence with an open mind?

On appeal, Smith argues his trial counsel presented a proper commitment question that asked the jurors whether they would require the State to prove "both elements of a conjunctive statute." *See Hill*, 334 S.W.3d at 229. Smith questioned the venire panel about the predicate convictions and behavioral abnormality without an objection from the State; therefore, the trial court allowed Smith to ask

10

the question that was at issue in *Hill*. *See id.* In this case, the State's objection was to asking the venire panel if anyone on the panel would be swayed by specific evidence. Smith's question isolated one relevant fact and sought to gauge its impact on the venire panel. *See Hyundai Motor Co. v. Vasquez*, 189 S.W.3d 743, 756-57 (Tex. 2006). The trial court could reasonably have concluded that Smith was suggesting that to be fair, the jury must not decide the case based on a relevant fact, and that the substance of the proposed question did not present a basis for disqualifying a juror for cause but sought to test the weight jurors would place on Smith's four previous convictions. *See id.* Because the trial court did not abuse its discretion, we overrule issue two.

## CROSS-EXAMINATION

In issue three, Smith contends the trial court denied Smith's constitutional and statutory right to cross-examine the State's expert regarding fees generated from other civil commitment cases. Smith made a bill of exception of Dr. Michael Arambula's excluded testimony, but failed to ask Dr. Arambula any questions about fees paid to him in other civil commitment cases. The State argues Smith failed to preserve error in that he failed to make an offer of proof that shows what Dr. Arambula's answers would have been.

During direct examination, Dr. Arambula stated that he has been evaluating individuals for behavioral abnormality for six years and has performed over seventy evaluations. He has been retained by the Special Prosecution Unit and testified in court in SVP commitment cases approximately fifty times. He has never been retained by the State Counsel for Offenders. Dr. Arambula stated that he determined the person did not have a behavioral abnormality in about five cases. Dr. Arambula testified that he is compensated at an hourly rate of $250 and that he was going to be compensated in this case but in an amount that was unknown to him.

During cross-examination, Smith asked Dr. Arambula, "Do you know how much you've been paid by the special prosecution unit to work in these cases?" Dr. Arambula replied that he did not know. Smith asked, "You oppose our office finding out how much you've been paid; isn't that correct?" Dr. Arambula replied, "Right. It's private and my wife and my income are all mixed together. Those are the two reasons." Smith then asked whether Dr. Arambula opposed State Counsel for Offenders obtaining his income information from the government agency that pays him. The trial court sustained the State's objection that Dr. Arambula has a privacy interest that protects him from disclosing his IRS filings to the State Counsel for Offenders.

12

"When cross-examination testimony is excluded, appellant need not show the answer to be expected but only need show that the substance of the evidence was apparent from the context within which the question was asked." *Chance v. Chance*, 911 S.W.2d 40, 52 (Tex. App.—Beaumont 1995, writ denied); *see also* Tex. R. Evid. 103(a)(2). Because Dr. Arambula had already testified that for reasons of privacy he opposes disclosing to the State Counsel for Offenders how much he has been paid by the Special Prosecution Unit, his response to the excluded question is apparent from the context. *See* Tex. R. Evid. 103(a)(2). We conclude in this appeal that we may consider Smith's challenge to the trial court's ruling on the State's objection.

"A witness may be cross-examined on any matter relevant to any issue in the case, including credibility." Tex. R. Evid. 611(b). The trial court has reasonable control over the mode and order of interrogating witnesses and presenting evidence. *Id.* 611(a). Considerations include the effective ascertainment of the truth, avoiding needless consumption of time, and protecting witnesses from harassment or undue embarrassment. *Id.* A trial court abuses its discretion if it unduly restricts cross-examination regarding a key issue in the case. *In re Commitment of Campbell*, No. 09-11-00407-CV, 2012 WL 2451620, at *6 (Tex. App.—Beaumont June 28, 2012, pet. denied) (mem. op.).

A witness may be impeached by proof of circumstances showing bias or interest. *See* Tex. R. Evid. 613(b). The question at issue in this case concerned whether Dr. Arambula generally opposes having State Counsel for Offenders obtain from the Special Prosecution Unit information concerning how much the State has paid Dr. Arambula. This Court has held that an expert witness who admitted he testifies almost exclusively for defendants could not be compelled to give deposition testimony regarding his litigation-related income and the percentage of total income that is litigation-related. *In re Weir*, 166 S.W.3d 861, 863-65 (Tex. App.—Beaumont 2005, orig. proceeding). An answer to whether Dr. Arambula opposes such a disclosure would not establish bias. Dr. Arambula testified that he is paid $250 per hour and had performed seventy evaluations and testified fifty times for the Special Prosecution Unit; therefore, he neither denied nor failed to disclose that he received significant compensation for testifying for the State in SVP commitment cases. Because information that revealed Dr. Arambula's bias or interest was before the jury and the excluded information would not have added significantly to Smith's ability to impeach Dr. Arambula's credibility, we conclude that the trial court's ruling did not unduly restrict Smith's cross-examination of the State's expert. *See* Tex. R. Evid. 611(a). The trial court did not abuse its discretion. We overrule issue three and affirm the judgment.

14

AFFIRMED.

_____
CHARLES KREGER
Justice

Submitted on November 21, 2013
Opinion Delivered January 23, 2014

Before McKeithen, C.J., Kreger and Horton, JJ.