In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-13-00345-CV
_____

IN RE COMMITMENT OF JAMES VERNE NADEN

On Appeal from the 435th District Court
Montgomery County, Texas
Trial Cause No. 12-11-11613 CV

MEMORANDUM OPINION

James Verne Naden appeals from a jury verdict that resulted in his civil commitment as a sexually violent predator. *See* Tex. Health & Safety Code Ann. §§ 841.001-.151 (West 2010 & Supp. 2014) (SVP statute). In issue one, Naden complains of errors that he alleges occurred during voir dire. In issue two, Naden argues that the trial court erred by denying his request to allow counsel to be present to assist him during his post-petition psychiatric examination, an examination conducted by the State's expert. In issue three, Naden challenges the trial court's admission of testimony by the State's expert explaining why she thought it would be misleading to apply an error rate to her prior evaluations in

cases evaluating whether individuals are sexually violent predators. We conclude Naden's issues do not raise matters of reversible error; therefore, we affirm the trial court's judgment and order of civil commitment.

## Voir Dire

In issue one, Naden complains of various comments the trial court made during voir dire, arguing that some of the comments demonstrated the trial court was biased and that in others, the trial court vouched for the credibility of the State's expert. We review whether the comments demonstrated judicial bias as a question of law. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 240 (Tex. 2001). In evaluating the proceedings, we evaluate the context of the comments at issue in light of the entire record. *See In re Commitment of Barbee*, 192 S.W.3d 835, 847 (Tex. App.—Beaumont 2006, no pet.).

Generally, trial courts have considerable discretion when conducting trials. *See Francis,* 46 S.W.3d at 240-41; *In re Commitment of Anderson*, 392 S.W.3d 878, 885 (Tex. App.—Beaumont 2013, pet. denied). In *Anderson*, we stated: "A trial court has inherent power to control the disposition of cases with economy of time and effort, exercising that power without bias and with patience, and in a manner that promotes confidence in the judge's impartiality." 392 S.W.3d at 885. In evaluating a specific ruling that a trial court has made to control a trial, we assume that the trial court was acting in good faith. *Barbee*, 192 S.W.3d at 847. In

2

*Francis*, the Texas Supreme Court provided the following guidance about evaluating comments that a judge may make in the course of a trial, stating: "'[J]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.'" *Francis,* 46 S.W.3d at 240 (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)).

To preserve error regarding a judge's comment during a trial, the complaining party must object when the comment occurs and request an instruction, unless an instruction about the comment would not have rendered the comment harmless. *Id.* at 241; *see In re Commitment of Lemmons*, No. 09-13-00346-CV, 2014 WL 1400671, at *3 (Tex. App.—Beaumont Apr. 10, 2014, pet. denied) (mem. op.). The record shows that Naden neither objected to the comments at issue when the trial court made them, nor did he ask the trial court for instructions directing the jury disregard them as conveying the trial court's views on Naden's case. Nevertheless, Naden contends that no instruction could have cured the prejudice he suffered from the rather general comments that are at issue in his appeal. *See Francis,* 46 S.W.3d at 241.

Some of Naden's complaints concern various comments the trial court made before the attorneys began questioning the array during jury selection. According to Naden, the statements amounted to a plea to the array asking that they enforce

3

the law in favor of the State. During voir dire, the trial court told the array that "juries enforce laws[]" and that "if we don't have people -- if people won't keep an open mind and listen to evidence, then our laws are meaningless." The trial court then explained that in criminal cases, juries decide whether a defendant is guilty and that "[i]f we don't have juries doing that, then we don't get all the plea bargaining we get going on because defendants wouldn't plea bargain if they didn't think there was a jury out there that would find them guilty." The record does not reflect that Naden objected or asked for any instructions with respect to these comments.

We conclude that Naden's complaints about these matters could have been resolved by proper instructions. Because Naden failed to object or request that the jury be instructed that the comments did not convey the trial court's views regarding the merits of Naden's case, his complaints about these comments were not properly preserved. *Id.*; *see also* Tex. R. App. P. 33.1(a)(1)(A).

Naden also complains about several comments the trial court made to alert the array about some of the evidence the trial court expected the jury would hear during Naden's trial. Naden complains about comments informing the array about the education those who served on the jury would receive on pedophilia by an expert in the field, and about a comment stating that the jurors did not have "advanced training [or] a college degree in the area of psychology or psychiatry[.]"

4

The trial court also suggested to the array that potential jurors' assumptions concerning pedophilia might be incorrect. According to Naden, when the trial court made these comments, it knew that the State's expert would be the only expert who testified about pedophilia during Naden's trial. Naden argues that the trial court's comments in voir dire about being educated by an expert implied the trial court expected a verdict in the State's favor. Naden concludes that instructions were incapable of curing the impression that the trial court gave the jury that jurors must accept the testimony of the State's expert.

The record shows that Naden failed to object to these comments, and that he failed to ask for any instructions to mitigate the impression he claims the trial court gave the jury through them. These comments are also matters that, in our opinion, were capable of being cured through appropriate instructions. Because Naden failed to object or request instructions in response to the trial court's statements, Naden failed to properly preserve his complaints for review on appeal. *See id*. We overrule issue one.

## Right to Counsel

In issue two, Naden contends that after the State filed its petition seeking to have him civilly committed for treatment as a sexually violent predator, he was denied the assistance of counsel during a psychiatric examination that was conducted by the State's expert. The record shows that in November 2012, the

5

State filed a petition seeking Naden's civil commitment as a sexually violent predator. Subsequently, the State filed a motion asking that Naden be examined by an expert, as authorized by section 841.061(c) of the Texas Health and Safety Code. *See* Tex. Health & Safety Code Ann. § 841.061(c) (West 2010). By order, the trial court authorized the State's expert to examine Naden in a manner "[c]onsistent with the Texas Health & Safety Code § 841 specifications[.]" *See id.* § 841.061(c), (f) (West 2010).

When the State filed its request to have Naden examined by an expert, Naden asked the trial court to appoint counsel to represent him. After the trial court appointed counsel to represent Naden, and before Naden was examined by the State's expert, Naden's attorney filed a motion asserting that Naden had the right to have counsel present while being examined. The trial court denied Naden's request. Several weeks after the trial court denied Naden's request, Dr. Lisa Clayton, a psychiatrist, examined Naden without counsel present. During Naden's trial, Dr. Clayton testified about her examination of Naden and the role it played in her risk assessment and evaluation.

Naden argues that section 841.114(a) of the Health and Safety Code gave him the right to have counsel present while being examined by the State's expert. *See id.* § 841.144(a) (West 2010) (allowing a person that is subject to civil commitment proceedings under Chapter 841 to have the assistance of counsel "at

6

all stages of the proceeding"). However, we have held that neither the SVP statute nor the Fourteenth Amendment create a right to have counsel present during the post-petition psychiatric examination that occurs in cases involving alleged sexually violent predators. *In re Commitment of Smith*, 422 S.W.3d 802, 807 (Tex. App.—Beaumont 2014, pet. denied). In Naden's case, Naden had counsel before he was examined by the State's expert, even though counsel was not allowed to be present during the examination by the doctor who later served as the State's expert at trial. Naden does not explain how his right to have the advice of counsel was impaired when he had counsel to provide him with advice both before and after Dr. Clayton examined him. *See id.* at 805.

Additionally, Naden has not shown how he was harmed because his counsel was not physically present during the examination conducted by the State's expert. In Naden's case, the record shows that during the trial, Naden did not object to Dr. Clayton's testimony concerning what Naden told Dr. Clayton during the examination, nor has Naden explained how any of the information the State obtained from the examination would not have been available had the trial court granted Naden's request to have counsel present. *See id.* at 806-07. Because Naden has not shown that he was denied the right to assistance of counsel, we overrule issue two.

7

Admission of Evidence

In issue three, Naden argues the trial court erred when it overruled his objection to the State's expert's explanation about why she thought it would be misleading to apply an error rate to her work in evaluating whether individuals are sexually violent predators. Naden argues that the trial court should have excluded Dr. Clayton's testimony for two reasons: because "an expert's rate of error is determined by how often [the opinions are] factually correct, not by how many times a jury has apparently accepted [the] testimony[;]" and because her testimony "improperly informed the jury that in every other case she has testified in, the jury return[ed] a verdict in favor of the State."

"We review a trial court's evidentiary rulings for abuse of discretion." *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 906 (Tex. 2000). We will not reverse unless the error probably caused the rendition of an improper verdict. Tex. R. App. P. 44.1(a)(1). The jury's finding that Naden is a sexually violent predator relied, in part, upon the opinion testimony of the State's expert. Therefore, questions about the accuracy of Dr. Clayton's opinions concerning the subject matter of her trial testimony are relevant inquiries. *See* Tex. R. Evid. 401 (stating relevant evidence tends to make the existence of a fact of consequence more or less probable then it would be without the evidence). "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of

8

unfair prejudice, confusion of the issues, or misleading the jury[.]" Tex. R. Evid. 403.

During her direct examination and in response to questions by the State's attorney, Dr. Clayton explained that she could not calculate a rate of error in cases like Naden's because in such cases, she was "making a medical diagnosis of an individual." When asked by the State's attorney if it would be misleading to indicate that she had a rate of error in such cases, Naden objected that Dr. Clayton's expected testimony was speculative, not relevant, and that it could be misleading. The trial court overruled these objections. Dr. Clayton then further explained:

> I guess, the only way if you're going to look at my - - if you're going to - - rate of error is how many times have I testified that someone has had a behavioral abnormality and how many times has a jury agreed with my testimony. Then at that point I would say my rate of error is zero.

When Naden complained that Dr. Clayton's response was misleading, the trial court ruled: "You brought this up in voir dire. Sit down. You may continue." Dr. Clayton then continued by stating: "I guess, at this point 100 percent of the time a jury, when I've testified about someone having a behavioral abnormality, has agreed with my opinion."

Our review of the record shows that the trial court allowed Dr. Clayton to explain her answer regarding why she thought it would be misleading to indicate

that her evaluations had been examined to determine her rate of error. There was no evidence that Dr. Clayton's SVP evaluations had been studied by others in her field to evaluate her accuracy. In the context of an explanation of why Dr. Clayton thought the concept was misleading as applied to her evaluations, Dr. Clayton's explanation was neither speculative nor irrelevant. *See* Tex. R. Evid. 401 (defining relevant evidence), 705 (allowing the trial court to admit the reasons the expert has used to form opinions unless the underlying facts would be inadmissible and there is the danger that the underlying data would be used for a purpose other than as an explanation). The record does not show that Naden asked for a limiting instruction regarding the jury's use of Dr. Clayton's explanation. *See id.* 705(d) (allowing the opposing party, upon request, to obtain a limiting instruction regarding the use of information concerning the reasons the expert used to form opinions).

The decision to admit or exclude evidence is within the trial court's discretion. *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995). The trial court may exercise reasonable control over the interrogation of witnesses to make the interrogation effective for the ascertainment of the truth. *See* Tex. R. Evid. 611(a). Under the circumstances, the trial court had the discretion to allow Dr. Clayton to explain why she thought a rate of error analysis did not apply to her evaluations in SVP cases. Because the testimony was offered to explain the expert's opinion, and because Naden did not request any limiting instruction

regarding how Dr. Clayton's explanation could be used, the trial court had the discretion to admit the testimony before the jury. *See* Tex. R. Evid. 705(d); *In re Commitment of Hill*, No. 09-11-00593-CV, 2013 WL 772834, at \*\*6-7 (Tex. App.—Beaumont Feb. 28, 2013, pet. denied) (mem. op.). We hold the trial court did not abuse its discretion by denying Naden's objections. We overrule issue three.

Having overruled all of Naden's issues, we affirm the trial court's judgment.

AFFIRMED.

 

_____

HOLLIS HORTON
Justice

Submitted on July 1, 2014
Opinion Delivered October 2, 2014

Before McKeithen, C.J., Horton and Johnson, JJ.