**Affirmed and Opinion filed October 30, 2014.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-13-00945-CV

---

## IN RE: COMMITMENT OF WILLIAM MICHAEL WIRTZ

---

**On Appeal from the 435th District Court
Montgomery County, Texas
Trial Court Cause No. 12-12-13062-CV**

---

### O P I N I O N

In four issues, appellant, William Michael Wirtz, appeals an order of civil commitment under the Sexually Violent Predator Act. *See* Tex. Health & Safety Code Ann. §§ 841.001–.151 (West 2010 & Supp. 2013) ("Act").[1] We affirm.

### I. BACKGROUND

In December 2012, prior to Wirtz's scheduled release from the Texas Department of Criminal Justice ("TDCJ"), the State of Texas filed a petition to

---

[1] This case was transferred to our court from the Beaumont Court of Appeals; therefore, we must decide the case in accordance with its precedent if our decision would be otherwise inconsistent with its precedent. *See* Tex. R. App. P. 41.3.

commit Wirtz as a sexually violent predator. *See* Tex. Health & Safety Code Ann. §§ 841.001–.151.

The State alleged Wirtz was convicted in June 1997 of "the sexually violent offense of Aggravated Sexual Assault of a child, Tex. Penal Code § 22.021," and in January 1989 and August 1993, of "the sexually violent offense of Indecency with a child by Contact, Tex. Penal Code 21.11(a)(1)." The State alleged each of these offenses were sexually violent offenses under Section 841.002(8)(A). *See* Tex. Health & Safety Code § 841.002(8)(A). Further, the State alleged Wirtz was assessed by TDCJ and determined to suffer from a "behavioral abnormality," pursuant to Section 841.023(a). *Id.* The State asked the trier of fact to find Wirtz is a sexually violent predator and to commit him for outpatient treatment and supervision.

Both Wirtz and David Self, M.D., forensic psychiatrist for the State, testified. The trial court granted the State's motion for directed verdict and found Wirtz is a "repeat sexually violent offender."[2] The jury then determined that Wirtz is a sexually violent predator. The trial court rendered final judgment and order of civil commitment. Wirtz appealed.

### III. ANALYSIS

In four issues, Wirtz complains (1) the trial court erred in not allowing counsel for Wirtz to be present at the State's post-petition psychiatric examination, (2) the trial court made a comment during voir dire which amounted to bias and an improper comment on the weight of the evidence, and (3) the evidence is legally and factually insufficient to support the verdict.

---

[2] *See* Tex. Health & Safety Code Ann. § 841.003(a).

2

## A.    Sufficiency of the evidence.

We will first address appellant's third and fourth issues, challenging the sufficiency of the evidence supporting his conviction. *See Owens v. State*, 135 S.W.3d 302, 305 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (holding legal-sufficiency challenge must be addressed first because if evidence is insufficient, reviewing court must render judgment of acquittal).

The Sexually Violent Predator Act mandates a beyond-a-reasonable-doubt-standard; therefore, we review legal and factual-sufficiency challenges under the standard of review utilized in criminal cases. In a legal-sufficiency challenge, we review all of the evidence in the light most favorable to the verdict. *See In re Commitment of Mullens*, 92 S.W.3d 881, 885 (Tex. App.—Beaumont 2002, pet denied) (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). "We look to see if a rational fact finder could have found, beyond a reasonable doubt, the elements required for commitment under the SVP [sexually violent predator] statute." *Id*.

In a factual-sufficiency challenge, "we view all of the evidence in a neutral light and ask whether a jury was rationally justified in finding guilt beyond a reasonable doubt. *In re Commitment of Gollihar*, 224 S.W.3d 843, 846 (Tex. App.—Beaumont 2007, no pet.)

We also note that factual-sufficiency review has been abandoned in criminal cases where the State's burden of proof is beyond a reasonable doubt. *See Brooks v. State*, 323 S.W.3d 893, 894–895 (Tex. Crim. App. 2010). However, in a civil commitment proceeding, the Beaumont Court of Appeals has continued, after *Brooks*, to perform what appears to be a factual-sufficiency review. *See In re Commitment of Day*, 342 S.W.3d 193, 213 (Tex. App.—Beaumont 2011, pet. denied) (announcing standard in civil commitment proceedings where verdict is

supported by legally-sufficient evidence, but the judgment reflects a "risk of injustice" and may compel ordering a new trial). We need not decide whether factual-sufficiency review remains available in civil commitment proceedings because we conclude the evidence is legally and factually sufficient in the present case.

Wirtz argues Dr. Self's testimony was no evidence he was a sexually violent predator. Wirtz contends Dr. Self's opinion is based on incorrect legal standards. Wirtz argues two cases from the United States Supreme Court require a finding that "the person currently both suffers from a 'mental abnormality' or 'personality disorder' and is likely to post a future danger to the public,"[3] in addition to "proof of serious difficulty in controlling behavior." *Kansas v. Crane*, 534 U.S. 407, 411, 122 S.Ct. 867, 151 L.Ed.2d 856 (2002). The *Crane* court focuses "the constitutional analysis on the seriousness of the abnormality and the seriousness of the danger to society posed by the abnormality, and not fundamentally on the nature of the abnormality as 'volitional, emotional or cognitive.'" *See In re Commitment of Almaguer*, 117 S.W.3d 500, 505 (Tex. App.—Beaumont 2003, pet. denied) (concluding refusal of jury instruction on volitional control was not a deprivation of due process).

The *Almaguer* court considered the Act in light of both *Crane* and *Hendricks*, holding:

> The statutory criteria submitted to the jury under the Texas statute in this case describes the severity of the behavioral abnormality and the severity of the danger which must be present to subject the person to

---

[3] *See Kansas v. Hendricks*, 521 U.S. 346, 358, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997) (construing statute similar to the Texas Act and concluding the Kansas Act's requirement of proof of dangerousness with proof of some additional factor, such as mental illness or mental abnormality, serves to "limit involuntary civil confinement to those who suffer from a volitional impairment rendering them dangerous beyond their control.").

civil commitment. The statutory definition describes behavior caused by the abnormality that makes the person a menace to the health and safety of another person. *See* § 841.002(2).

*Id.* at 505.

Wirtz contends Dr. Self's testimony is no evidence because he failed to consider that only those individuals with a "special and serious lack of ability to control behavior" may be civilly committed. *See Crane*, 534 U.S. at 413. This argument ignores the specific statutory requirements of the Act, which were included in the jury charge.

The State has the burden to prove:

(a) A person is a sexually violent predator for the purposes of this chapter if the person:

    (1) is a repeat sexually violent offender; and

    (2) suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence.

(b) A person is a repeat sexually violent offender for the purposes of this chapter if the person is convicted of more than one sexually violent offense and a sentence is imposed for at least one of the offenses . . . .

Tex. Health & Safety Code Ann. § 841.003(a) and (b).

"Behavioral abnormality" means a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person. Tex. Health & Safety Code Ann. § 841.002(2).

Utilizing these definitions, the jury found Wirtz was a sexually violent predator. Thus, the jury's finding Wirtz is a sexually violent predator, "entails a determination that he has 'serious difficulty in controlling behavior.'" *See Almaguer*, 117 S.W.3d at 505 (citing *In re Commitment of Browning*, 113 S.W.3d

5

851, 862–63 (Tex. App.—Austin 2003, pet. denied) (approving broad-form submission tracking the statute encompassed lack-of-control determination).

The jury's finding is supported by the testimony of Wirtz and Dr. Self. Wirtz, age fifty-three at the time of trial, testified that since approximately age eight, he has engaged in sexually-related activities, including looking at pornography and having mental fantasies regarding sex. He first had sexual intercourse when he was approximately seventeen. Wirtz has been married twice; pornography and anger issues permeated the first marriage; an affair with his wife's sister ended the second marriage. He testified he has been arrested several times, beginning in 1984, when he exposed himself to a ten-year-old girl. He exposed himself on other occasions, but was not always caught. A third exposure incident also occurred in 1984. Wirtz pleaded guilty and was sentenced to eight years' deferred adjudication for the felony offense of indecency with a child by exposure. Wirtz violated his probation in 1988 by failing to notify his probation officer of his change of employment and residence. He also violated probation in 1988 by again exposing himself to a child. Wirtz was then incarcerated and released on parole in 1990. He returned to prison as a parole violator for exposing himself to an elderly lady in a shopping mall. Wirtz was ultimately convicted of the 1988 incident, indecency with a child, and sentenced to twenty years in prison.

Wirtz also testified about a relationship he had with an eight or nine-year-old boy which occurred when Wirtz was approximately thirty-three-years old. Wirtz considered it a consensual and loving-type sexual relationship. He now believes the relationship was illegal because the child was a minor. Wirtz was ultimately convicted of sexually assaulting this child and sentenced to eighteen years in TDCJ. While in prison, Wirtz received disciplinary action for failing to attend the Sex Offender Treatment Program, for other public sexual actions, and in 2009, for

6

threatening a cellmate. Wirtz describes his sexual urges today as non-existent due to impotency resulting from a 2011 heart attack. No forensic psychiatrist testified for Wirtz.

Dr. Self, the State's forensic psychiatrist, testified "behavioral abnormality" may be any condition that makes someone likely to engage in a predatory act of sexual violence by affecting his volitional and emotional capacity and "likely" means "more than a mere possibility." *See Mullens*, 92 S.W.3d at 885. Dr. Self diagnosed Wirtz with non-exclusive pedophilia, a chronic condition, and as an exhibitionist. Both are pertinent on the notion of behavioral abnormality. He arrived at this diagnosis after reviewing the records and interviewing Wirtz in the post-petition examination. Dr. Self explained that individuals with pedophilia are more likely than the general population to engage in sexual acts of violence and that "most people, if they volitionally and when they were compos mentis offended several times, they're probably going to come pretty close" to having a behavioral abnormality.

Dr. Self testified that Wirtz's lifestyle instability and his sexual deviance, also a well-known factor for recidivism, cause him to act on his urges. Dr. Self explained that Wirtz had the highest score on the Static-99 scale, indicating a high risk of re-offense. Additionally, Dr. Self noted Wirtz's history of offending which began in 1984, and he pointed out the various instances where Wirtz violated the terms of his probation. While his last offense occurred in 1992, Dr. Self noted Wirtz re-offended within a seven month period of his release from prison, and Dr. Self confirmed Wirtz's refusal to attend the Sex Offender Treatment Program and his discipline for other sexual acts in 2002 and 2005 while incarcerated. Dr. Self testified the fact Wirtz had reoffended such a short time after he was released shows his condition affects his volitional capacity. Also important to Dr. Self was

7

Wirtz's characterization of his acts against children as illegal, but not wrong, he tended to blame the children involved, and he appeared to have no regard or empathy for the persons on whom he inflicted great suffering. Dr. Self testified that while Wirtz is not a "full blown psychopath," he is "one step away from antisocial personality disorder" and he is "a liar, a huge liar."

The jury reached its decision after hearing Wirtz's version of his actions and Dr. Self's testimony. Considering all of the evidence in the light most favorable to the verdict, we conclude the jury could find beyond a reasonable doubt that Wirtz is a sexually violent predator and, as such, he is likely to engage in a predatory act of sexual violence. Additionally, in considering all of the evidence in a neutral light, we conclude the jury could find beyond a reasonable doubt that Wirtz is a sexually violent predator. Therefore, we overrule Wirtz's third and fourth issues.

## B.    Absence of counsel at post-petition examination.

Section 841.144(a) provides:

> Immediately after the filing of a petition under Section 841.041, a person subject to a civil commitment proceeding . . . is entitled to the *assistance* of counsel at all stages of the proceeding.

Tex. Health & Safety Code Ann. § 841.144(a). (Emphasis added). "Civil commitment proceeding" means a *trial* or *hearing* conducted under Subchapter D, F, or G.[4] Tex. Health & Safety Code Ann. § 841.002(3-a). (Emphasis added).

Wirtz's argument appears to equate "assistance" of counsel with "presence" of counsel. While the Act provides a person subject to a civil commitment proceeding is entitled to the assistance of counsel at all stages of the proceeding, it is silent as to whether or when counsel must be present at all stages. We are bound

---

[4]    Subchapter D is entitled "Trials"; Subchapter F involves "Commitment Review"; and, Subchapter G deals with "Petition for Release." Tex. Health & Safety Code Ann. Sections 841.061–064, 841.101–103 and 841.121–124, respectively.

8

to construe a statute as written. *See Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer*, 904 S.W.2d 656, 659 (Tex. 1995) (concluding legislature used, and excluded, every word for a purpose); *Dunham Engineering, Inc. v. Sherwin-Williams Co.*, 404 S.W.3d 785, 789 (Tex. App.—Houston [14th Dist.] 2013, no. pet.) (presuming "every omitted word was purposefully not chosen") (citing *Epco Holding, Inc. v. Chicago Bridge & Iron Co.*, 352 S.W.3d 265, 269 (Tex. App.—Houston [14th Dist.] 2011, pet dism'd) (other citations omitted). Wirtz does not refer to, and we have not found, any provision in the Act requiring the presence of counsel at a post-petition examination.

Next, relying on the Due Process Clause of the Fourteenth Amendment to the United States Constitution, Wirtz argues he is guaranteed counsel at *all* stages of the civil-commitment proceeding, including the post-petition expert examination. Analyzing this argument involves three relevant factors: (1) the private interest affected by the proceeding or official action; (2) the countervailing governmental interest supporting use of the challenged proceeding; and, (3) the risk of an erroneous deprivation of that interest due to the procedure used. *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Clearly, both Wirtz and the State have an interest in the examination because the outcome of it would play a role in the trier of fact's determination of whether Wirtz is a sexually violent predator. However, having counsel present during the examination is not the only method for protecting Wirtz's interest. Wirtz may protect his rights by taking the deposition of the expert and subjecting the expert to cross-examination at trial and by moving to exclude or limit the expert's testimony.

Wirtz was provided the "assistance" of counsel prior to the examination and he makes no showing counsel was precluded from assisting him. Wirtz did not object to Dr. Self's testimony or cross-examine him regarding the questions asked

9

or methodology employed during his examination of Wirtz. He does not refer to any specific results of Wirtz's examination or of Dr. Self's testimony which would not have been obtained, or would have been impacted, had counsel been present. Wirtz asserts that without counsel present, the State could use the examinations to "coach" other expert witnesses and the State has no support for its argument that presence of counsel could be distracting or damage "test security [and] copyright." We note the burden is not on the State to support its arguments. Rather, the burden is on Wirtz to show harm from the exclusion of counsel at the examination. Wirtz offered no evidence to support his contentions, and none of these arguments were addressed in the trial court. We conclude Wirtz is not entitled to the presence of counsel under the Due Process Clause.

As further support, Wirtz also relies on the dissenting opinion in *Simmons v. Thompson*, 900 S.W.2d 403, 404 (Tex. App.—Texarkana 1995, orig. proceeding) (Grant, J., dissenting) which reasons "the adversarial status of the examining doctor is a compelling reason to permit attendance by counsel to prevent improper questioning on liability issues and to observe possible shortcomings and improprieties in the examination." *Id*. However, the *Simmons* court held there is no right to have an attorney present during the examination, relying on the fact there were no facts demonstrating the need for the attorney to be present. *Id*. As noted above, Wirtz offered no facts demonstrating the need for the presence of counsel, and simply states "the trial court's denial of counsel was unwarranted, reversal is automatic," citing *Villegas v. Carter*, 711 S.W.2d 624, 626 (Tex. 1986) (holding after counsel withdrew only six days before client's deposition and two days before trial, court erred in not allowing that party time to obtain new counsel).

Finally, Wirtz cites *In the Matter of State of New York v. Soto*, 20 Misc.3d 679, 860 N.Y.S.2d 725 (Sup.Ct., Bronx County 2008) and *In re Detention of*

*Kistenmacher*, 138 P.3d 648 (Wash. 2008). Neither case is controlling. The question in *Soto* was whether the State's attorney could be present during the examination by the State's expert where the insanity defense had been raised. *Soto* 860 N.Y.S.2d at 726. The *Kistenmacher* court held the party had a right to counsel at his precommitment examination; yet, counsel was not notified of the examination in time to be present. *Id.* at 953. The court found the error harmless because Kistenmacher made the same statements in the examination as he did in his deposition and there was no evidence that the doctor's opinion would have changed had counsel for Kistenmacher been present. *Id.* at 953.

We hold that under the circumstances of this case, Section 841.144(a) of the Act did not require the attorney's presence at the post-petition psychiatric examination. *See In re Commitment of Smith*, 422 S.W.3d 802, 805–807 (Tex. App.—Beaumont 2014, pet. filed) (concluding "that neither the SVP statute nor the Fourteenth Amendment require that counsel be present during a psychiatrist's post-petition examination."). *Id*. at 807. As in the instant appeal, Smith did not explain why counsel needed to be present, what results or testimony would have been different, and what concerns could not have been handled by way of motions or objections before or during trial. Further, "Smith does not explain how counsel's absence during the psychiatric examination either invalidated the examination or precluded Smith from challenging the expert's testimony at trial. Moreover, when the psychiatric examination occurred, Smith was represented by counsel and had prior notice of the examination." *Id*.

Similarly, Wirtz, who was represented at the time of the examination, also fails to show how the absence of his counsel from the post-petition examination caused harm. *See also In re Commitment of Edwards,* No. 09-13-00575-CV, --- S.W.3d ---. 2014 WL 4358484, at *8 (Tex. App.—Beaumont Sept. 4, 2014, no pet.

11

h.) (confirming presence of counsel at post-petition examination not required); *In re Commitment of Speed*, No. 09-13-00488-CV, 2014 WL 1663361, at *1–3 (Tex. App.—Beaumont Apr. 24, 2014, pet. denied) (mem. op.); *In re Commitment of Lemmons*, No. 09-13-00346-CV, 2014 WL 1400671, at *1 (Tex. App.—Beaumont Apr. 10, 2014, pet. denied) (mem. op.); *Beasley v. Molett*, 95 S.W.3d 590, 602–03 (Tex. App.—Beaumont, 2002, pet. denied) (holding counsel not required to be present at pre-petition examination); *Gilley v. State*, 418 S.W.3d 114, 120–125 (Tex. Crim. App. 2014) (rejecting claim Sixth Amendment right to counsel requires presence during child-witness competency proceeding); *Lagrone v. State*, 942 S.W.2d 602, 611 (Tex. Crim. App. 1997) (affirming "constitutional validity of excluding defense counsel" from psychiatric exam); *Bennett v. State*, 766 S.W.2d 227, 230 (Tex. Crim. App. 1989) (concluding defendants "do not possess the right to have counsel present during a psychiatric examination" because it could "limit the efficacy of the examination."). We overrule Wirtz's first issue.

## C.  Comment during voir dire.

Wirtz complains the following comment by the trial court constituted bias and was an improper comment on the weight of the evidence:

> Now, I will tell you that what you know about pedophilia you probably were told by somebody or you read on the Internet, or my generation, magazines. . . . And we all know the Internet is never wrong. If you're lucky enough to get on this jury you can expect to hear an expert witness come in and talk to you about this issue, and so it's an educational process.

Wirtz asserts that by pointing out this "educational" opportunity, the trial court bolstered the credibility of the State's expert witness.

Allegedly improper comments of a trial court are reviewed as a question of law. *In re Commitment of Barbee*, 192 S.W.3d 835, 847 (Tex. App.—Beaumont

2006, no pet.) (citing *Dow Chemical Co. v. Francis*, 46 S.W.3d 237, 240 (Tex. 2001)).

> A trial court has great discretion in the manner it conducts a trial, and possesses 'the authority to express itself in exercising this broad discretion. *Id.* The complaining party first must show the comments were improper, and then show that the improper comments prejudiced the complaining party. *Metzger v. Sebek*, 892 S.W.2d 20, 39 (Tex. App.—Houston [1st Dist.] 1994, writ denied).

*Dow Chemical*, 46 S.W.3d at 241.

To preserve the complaint for appellate review, the complaining party must object when the comment is made and request an instruction unless the comments cannot be rendered harmless by use of an instruction.[5] *Id.* Comments of the trial court must be viewed in the context of the entire voir dire examination. *See Barbee*, 192 S.W.3d at 848. In addition to the comment that the jury will "hear an expert witness come in and talk to you about this issue, and so it's an educational process," the trial court also stated:

- "But I want to make sure that you're willing to keep an open mind, even if you hear the word pedophilia . . . ."

- "Like I said, I know it's getting to be an old theme from this Judge, but I know it's an intellectual process we have to go through that, when we hear those words, to keep an open mind, listen to the evidence. . . ."

- The "burden does not shift from the State."

- "[T]he burden of proof stays on the State of Texas."

- "The State has to prove their [sic] case."

- "We don't want to have any burden shifting. I need to know if we're going to be shifting the burden here."

---

[5] We will assume, without deciding, that Wirtz preserved this issue for appellate review.

- Further, "I have to make sure we can keep an open mind, not going to shift the burden of proof, going to judge the credibility right."

Additionally, the trial court admonished the jury to "judge Mr. Wirtz's credibility . . . you cannot prejudge Mr. Wirtz and say, because he's a criminal, I can't believe a word he has to say. You have to listen to what he has to say first, then take into account his criminal record, then judge his credibility."

"A trial court improperly comments on the weight of the evidence if it makes a statement that implies approval of the State's argument, indicates disbelief in the defense's position, or diminishes the credibility of the defense's approach to the case." *Simon v. State*, 203 S.W.3d 581, 590 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (citing *Clark v. State*, 878 S.W.2d 224, 226 (Tex. App.—Dallas 1994, no pet.)). The context demonstrates that at the relevant times, the trial court made clear the jury was required to keep an open mind and the State had the burden to prove its case. The trial court mentioned only that an expert witness would testify; there was no comment that his testimony was more credible or of more value than Wirtz's. Therefore, we hold the comment did not constitute bias or an improper comment on the weight of the evidence. *See Kihega v. State*, 392 S.W.3d 828, 834 (Tex. App.—Texarkana 2013, no pet.) (holding a trial court's recognition of a witness as an expert does not amount to improper comment). We overrule Wirtz's second issue.

We affirm the judgment of the trial court.


/s/    John Donovan
         Justice

Panel consists of Chief Justice Frost and Justices Donovan and Brown.
Publish—Tex. R. App. P. 47.2(b).

14