In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-13-00574-CV
_____


IN RE COMMITMENT OF MICHAEL PHILLIP DANIEL

On Appeal from the 435th District Court
Montgomery County, Texas
Trial Cause No. 13-05-05760 CV

MEMORANDUM OPINION

The State of Texas filed a petition to commit Michael Phillip Daniel as a sexually violent predator ("SVP"). *See* Tex. Health & Safety Code Ann. § 841.001-.151 (West 2010 & Supp. 2014). A jury found that Daniel is a sexually violent predator and the trial court rendered a final judgment and an order of civil commitment. In three appellate issues, Daniel challenges the legal and factual sufficiency of the evidence to support the jury's verdict and the denial of his request to have an attorney present during the State's post-petition expert examination. We affirm the trial court's judgment and order of civil commitment.

1

## LEGAL AND FACTUAL SUFFICIENCY

In issues one and two, Daniel contends the evidence is legally and factually insufficient to support the jury's verdict because the State failed to produce evidence demonstrating Daniel is "volitionally impaired and likely to reoffend sexually." Under a legal sufficiency review, we assess all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could find, beyond a reasonable doubt, the elements required for commitment under the SVP statute. *In re Commitment of Mullens*, 92 S.W.3d 881, 885 (Tex. App.—Beaumont 2002, pet. denied). It is the factfinder's responsibility to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *Id.* at 887. Under a factual sufficiency review, we weigh the evidence to determine "whether a verdict that is supported by legally sufficient evidence nevertheless reflects a risk of injustice that would compel ordering a new trial." *In re Commitment of Day*, 342 S.W.3d 193, 213 (Tex. App.—Beaumont 2011, pet. denied).

In an SVP case, the State must prove, beyond a reasonable doubt, that a person is a sexually violent predator. Tex. Health & Safety Code Ann. § 841.062(a) (West 2010). A person is a "sexually violent predator" if he is a repeat sexually violent offender and suffers from a behavioral abnormality that

makes him likely to engage in a predatory act of sexual violence. *Id.* § 841.003(a) (West Supp. 2014). A "behavioral abnormality" is "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *Id.* § 841.002(2) (West Supp. 2014). "A condition which affects either emotional capacity or volitional capacity to the extent a person is predisposed to threaten the health and safety of others with acts of sexual violence is an abnormality which causes serious difficulty in behavior control." *In re Commitment of Almaguer*, 117 S.W.3d 500, 506 (Tex. App.—Beaumont 2003, pet. denied).

During trial, the jury heard Daniel's admissions that he molested three young boys in 1989 and that he pleaded guilty to two charges of aggravated sexual assault and one charge of indecency with a child. In four other complaints, he was also charged with other acts of indecency with a child, but those charges were dismissed as a result of his plea bargain. He received a twenty-five-year prison sentence for the two aggravated sexual assault convictions and a twenty-year prison sentence for the indecency with a child conviction, and the trial court ordered the sentences to run concurrently. At the time of the trial, Daniel was

serving his sentences for his aggravated sexual assault convictions and he had completed his sentence for the conviction for indecency with a child.

Daniel testified that, with respect to his convictions, two of the children he assaulted lived next door, and the other child he assaulted was the son of one of Daniel's friends. Daniel testified that he had known all of the victims for years. He admitted he did a "considerable amount of grooming" with his first victim as a way of manipulating the child into being more comfortable while being abused. Daniel admitted to "grooming" one of the other victims, whom Daniel offended against over a two-month period.

At trial, Daniel stated that although he had completed a nine-month sex offender treatment program, he believed he needed more treatment because there is "a behavioral maintenance that is required." He testified that at the time of the offenses, he was struggling with his sexual orientation, which produced feelings of inadequacy, irrational beliefs, and fear of rejection. Such negative feelings, he explained, functioned as triggers for him to commit offenses. According to Daniel, he no longer has these triggers. He stated that he has accepted his homosexuality and his current triggers for offending sexually are "being in stressful situations, being in a zero state, not challenging irrational beliefs[,]" and possibly

pornography. Daniel testified that while incarcerated he has had sex with four individuals and looked at pornography.

Daniel told the jury that he blames himself for his offenses and is remorseful. He testified he no longer has sexual fantasies involving children. Although Daniel had not had a relationship in the two years prior to trial, he stated that he believed that being in a relationship will help him not offend. He does not believe he will reoffend sexually because of his "determination[,]" the fact that he has "grown and learned new things" about himself and about accepting his sexuality, and that he is "satisfied with adult relationships."

Dr. Michael Arambula, a medical doctor specializing in general and forensic psychiatry, testified that Daniel has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. Arambula stated that he diagnosed Daniel as having sexual deviance, pedophilia, and personality disorder not otherwise specified with avoidant features. Arambula explained that pedophilia is a chronic condition. He testified that "[w]hat really drives this case is [Daniel's] sexual deviance and the severity and the seriousness of the things that he did." According to Arambula, Daniel did not "progress that far" with his sex offender treatment. Arambula spoke with Daniel's treatment provider who explained that although the therapist allowed Daniel to get credit for completing the treatment

5

program, the provider was not able to see Daniel apply knowledge from the treatment, and the provider had concerns about the quality of Daniel's work towards the end of the treatment program.

Arambula stated several factors increase Daniel's risk of sexual re-offense, including Daniel's sexual deviance and pedophilia, the fact that he has all male victims, the number of victims and their young age, the numerosity of incidents, the intrusive nature of the offenses, the long time period over which the offenses occurred, Daniel's continued denial and minimization regarding his offenses, and Daniel's personality pathology, lack of treatment, and lack of good adult relationships. Arambula also described some factors that might lower Daniel's risk of reoffending, including the fact that Daniel does not have significant antisocial personality, he has had a good work history, he did not cause trouble while in prison, he took college courses and received two degrees while incarcerated, he has no significant history with drugs or alcohol, he did not hit or tie up his victims, and he has participated in some treatment.

On cross-examination, Arambula disagreed with an earlier actuarial administered to Daniel that scored Daniel in the low range for sexually reoffending. Arambula explained that the actuarial, the Static-99, does not accurately represent Daniel's level of risk for sexually reoffending. Arambula

noted that, in his expert opinion, Daniel's level of risk for sexually reoffending is "rather high because he's a pedophile, and his victims have all been boys. . . . [T]he research says those people have particularly chronic illness and they're prone to higher rates of recidivism." When asked how he considers control as part of his evaluation, Arambula explained that he examines the clinical course of the illness and how the symptoms emerge and the illness is managed.

Dr. Marisa Mauro, a licensed psychologist and licensed sex offender treatment provider, testified for the defense. It was her opinion that Daniel does not have a behavioral abnormality. Mauro diagnosed Daniel with pedophilic disorder nonexclusive, limited to males. She conducted the PCL-R, on which Daniel scored a six, which means that he is not psychopathic. Mauro performed the Static-99R actuarial test on which Daniel scored a two, which "is associated with a 5 percent expected recidivism rate in five years." She testified that on the Static-2002R Daniel scored a three, and Mauro explained that "individuals with a score of 3 have been found in the normative sample to recidivate 2.8 percent of the time in five years."

Mauro identified the following risk factors: Daniel's number of convictions, that he has had more than two victims under the age of twelve, that he has had male victims, that he has had victims that are not related to him, and that he has a

7

pedophilia disorder. Mauro also identified some protective factors, which may lower his risk of reoffending, including Daniel's successful completion and discharge from sex offender treatment, his successful work history in the community and in prison, he has positive family relationships and family support, and his education. Mauro noted that Daniel's neutral factors are that he does not have antisocial personality disorder or any other personality disorder, and that he does not suffer from any substance addiction. She explained that Daniel's sex offender treatment provider's notes reflected that the latter portions of Daniel's treatment "were not as good of quality as they had been in the past" and that the therapist noted that he felt that Daniel felt pressure from his attorney to complete all of the assignments as soon as possible. Mauro testified that she did not agree with Arambula that denial and minimization are risk factors for Daniel for reoffending sexually. But, Mauro acknowledged that it is possible that Daniel still has sexual fantasies of prepubescent male children because the sexual attraction to children is "thought to be persistent." Although she agreed that pedophilia is a condition that can affect a person's emotional or volitional capacity, she did not believe that Daniel's pedophilia has affected his emotional or volitional capacity to the extent that he is a menace to the health and safety of another person. Mauro did

8

not believe that Daniel has serious difficulty controlling his behavior or has a condition that affects his emotional or volitional capacity.

The jury heard Dr. Arambula's testimony that Daniel has a behavioral abnormality that makes him likely to engage in predatory acts of sexual violence, as well as evidence of Daniel's risk factors, sexual offenses, and diagnoses. The jury also heard Daniel's admissions, that he currently still has "triggers" for reoffending sexually, and that he believes he needs more sex offender treatment. Arambula testified that Daniel's risk of reoffending sexually is "rather high." Whether a person suffers from an emotional or volitional defect so grave as to cause behavior that makes him to be a menace is included in the determination of whether he has a serious difficulty in controlling behavior. *Almaguer*, 117 S.W.3d at 505-06. The jury could infer serious difficulty controlling behavior not only from the expert testimony, but also from Daniel's past behavior and history. *See In re Commitment of Burnett*, No. 09-09-00009-CV, 2009 Tex. App. LEXIS 9930, at *13 (Tex. App.—Beaumont Dec. 31, 2009, no pet.) (mem. op.); *see also In re Commitment of Grinstead*, No. 09-07-00412-CV, 2009 Tex. App. LEXIS 228, at *20 (Tex. App.—Beaumont Jan. 15, 2009, no pet. ) (mem. op.). As sole judge of the weight and credibility of the evidence, the jury could reasonably conclude that Daniel suffers from a behavioral abnormality that makes him likely to engage in a

predatory act of sexual violence. *See Grinstead*, 2009 Tex. App. LEXIS 228, at **20, 21; *see also Almaguer*, 117 S.W.3d at 505; *Mullens*, 92 S.W.3d at 887.

Viewing the evidence in the light most favorable to the verdict, a rational jury could have found, beyond a reasonable doubt, that Daniel is a sexually violent predator. Therefore, we conclude that the evidence is legally sufficient. *See* Tex. Health & Safety Code Ann. § 841.062(a); *see also Kansas v. Crane*, 534 U.S. 407, 413 (2002); *Mullens*, 92 S.W.3d at 885. Furthermore, weighing all of the evidence, the verdict does not reflect a risk of injustice that would compel ordering a new trial. *See Day*, 342 S.W.3d at 213. We overrule issues one and two.

RIGHT TO COUNSEL

In issue three, Daniel contends that the trial court committed reversible error by denying him the right to have his attorney present at the post-petition psychiatric examination conducted by the State's expert prior to trial. We have held that neither the SVP statute nor the Fourteenth Amendment requires that counsel be present during a psychiatrist's post-petition examination. *In re Commitment of Smith*, 422 S.W.3d 802, 807 (Tex. App.—Beaumont 2014, pet. denied). Daniel argues that *Smith* was based solely on a concession by Smith that the SVP statute defines a civil commitment proceeding as a "trial or hearing" and does not appear to encompass a pre-trial psychiatric examination. *Id.* at 806. In

10

*Smith*, while we noted that Smith made a concession, we did not use the concession to reach our holding. *Id.* at 804-07. Additionally, we have upheld our ruling in *Smith* in other cases. *See In re Commitment of Edwards*, No. 09-13-00575-CV, 2014 Tex. App. LEXIS10033, at *20 (Tex. App.—Beaumont Sept. 4, 2014, no pet. h.); *In re Commitment of Speed*, No. 09-13-00488-CV, 2014 Tex. App. LEXIS 4444, at *2 (Tex. App.—Beaumont Apr. 24, 2014, pet. denied) (mem. op.); *see also In re Commitment of Lemmons*, No. 09-13-00346-CV, 2014 Tex. App. LEXIS 3888, at **1-2 (Tex. App.—Beaumont Apr. 10, 2014, pet. denied) (mem. op.). We decline to revisit our previous rulings. For the reasoning discussed in *Smith*, we overrule Daniel's third issue.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on October 15, 2014
Opinion Delivered November 20, 2014

Before McKeithen, C.J., Horton and Johnson, JJ.

11