

# NUMBER 13-19-00064-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

## IN RE THE SOCIETY OF OUR LADY OF THE MOST HOLY TRINITY

## On Petition for Writ of Mandamus.

# OPINION

**Before Justices Benavides, Longoria, and Hinojosa**
**Opinion by Justice Hinojosa[1]**

In this original proceeding, The Society of Our Lady of the Most Holy Trinity (Society) contends the trial court[2] abused its discretion by allowing the real party in interest, Jane Doe, to videotape the psychological examination ordered for Doe pursuant to Texas Rule of Civil Procedure 204.1. *See* TEX. R. CIV. P. 204.1 (providing for court-

---

[1] *See* TEX. R. APP. P. 52.8(d) ("When denying relief, the court may hand down an opinion but is not required to do so. When granting relief, the court must hand down an opinion as in any other case."); *see also id.* R. 47.4 (distinguishing opinions and memorandum opinions).

[2] This original proceeding arises from trial court cause number 2016CCV-61648-3 in the County Court at Law No. 3 of Nueces County, Texas, and the respondent is the Honorable Deeanne Galvan. *See* TEX. R. APP. P. 52.2.

ordered physical and mental examinations). Society seeks to compel the trial court to vacate its November 27, 2018 order allowing for Doe's examination to be recorded by video and its December 12, 2018 order denying reconsideration of that order. Because Doe did not meet her burden to show good cause for the examination to be videotaped, we conditionally grant the petition for writ of mandamus.

## I. BACKGROUND

Doe filed suit against Society and others[3] alleging that she was raped and sexually abused as a child by Stephen Tarlton Dougherty, who was at that time a priest. In 2018, Dougherty was convicted of raping Doe when she was thirteen years old. He was sentenced to sixty years of imprisonment. In the present civil lawsuit, Doe alleged, in part, that Society knew Dougherty was "an admitted child molester" before it ordained him as a priest and promoted him to the public as a parish priest. Doe asserted that Dougherty admitted to Society, prior to his ordination, that he had previously sexually abused an eight-year old boy, R.B. Doe sought damages for past and future medical expenses, pain and suffering, mental anguish, physical impairment, and lost wages and diminished wage-earning capacity.

On September 11, 2018, Society filed a "Motion to Compel an Independent Medical Examination" of Doe on grounds that she had "alleged past and present severe physical, emotional and psychological pain and suffering, mental anguish, physical impairment, medical expenses, and lost wages." Society requested that Dr. Gabrielle

---

[3] Doe also filed suit against Stephen Tarlton Dougherty and the Most Reverend W.M. Michael Mulvey, S.T.L., D.D., as Bishop of the Diocese of Corpus Christi and His Successors in Interest, A Corporate Sole (the Diocese). The petition for writ of mandamus refers to the Diocese as a "Settled Defendant." Neither the Diocese nor Dougherty has filed a response to Society's petition for writ of mandamus.

Hobday, a board-certified forensic psychiatrist, perform the examination and prepare a report regarding the results.

On September 14, 2018, Doe filed a response to Society's motion for an examination alleging, inter alia, that Society had failed to show good cause for the examination because experts had not yet been designated in the case and Society could obtain the desired information through less intrusive means. Doe objected to Society's request as unreasonable, overly broad, and unduly burdensome, and she argued that the request failed "to state with specificity the examination(s) sought" and failed "to identify how the examination(s) sought (which are not identified) are relevant to the issues in controversy."

On September 14, 2018, the trial court held a hearing on Society's motion to compel the examination. One of Doe's counsel stated that he was "not opposed" to the examination itself but was concerned about the parameters of the proposed examination and wanted to avoid a "deposition" with "questions wholly outside of the range of things that should be asked." The trial court discussed the *Coates* case and its requirement that the movant show good cause for the examination and suggested that the examination should be "narrowly tailored." *Coates v. Whittington*, 758 S.W.2d 749, 753 (Tex. 1988) (orig. proceeding) (establishing the "good cause" test for examinations under former Rule 167, now TEX. R. CIV. P. 204). The trial court ultimately recessed the hearing to allow the parties to attempt to agree on the location, duration, and parameters of the proposed examination.

3

The trial court held a second hearing on Society's motion to compel an examination on November 11 or 14, 2018.[4] Society advised the trial court that the parties had not been able to resolve the outstanding issues pertaining to the examination. Society stated that Doe's counsel had requested that (1) Hobday identify in advance the tests that she would be conducting during the examination, and (2) the examination be videotaped with a "live video feed" or with an observer present during the examination. Society argued that these conditions were not supported by the law and noted that Doe's expert, Dr. Alexandria H. Doyle, who had examined Doe,[5] was not similarly encumbered in performing her examination. Society further argued that the examination was necessary to fully evaluate Doe's claims and conditions.

At the hearing, Doe's counsel appeared to retreat from his former position that he was "not opposed" to the examination. Doe's attorneys argued that Society had not met its burden to show good cause for the examination and argued that Doe was entitled to know the names of the tests that Hobday would administer. Doe's counsel further asserted that Society already had relevant information regarding Doe's psychological status in the form of her testimony in the transcripts from Dougherty's criminal trial and her medical records. Counsel requested that the trial court order that Doe's counsel be permitted to be present at the examination because counsel had previous experience "where experts go outside of a [c]ourt's order" and "experts have tried to interview whoever drove the Plaintiff to the interview session." Counsel further requested that the trial court order Society to identify the tests that would be administered during the

<hr>

[4] The reporter's record for this hearing includes both dates. This discrepancy is not material to our analysis.

[5] Doyle is not Doe's regular treating physician but is an expert retained for purposes of litigation.

examination and to limit the examination to the identified tests "so that all of us have knowledge of what's going on." Counsel argued as follows:

> This is obviously an adverse proceeding. We're not going to place our vulnerable young lady who has been raped in a position where we don't know what's going on. We want to know what she can expect that day. I don't have to know every word that's going to be said, but I do want to know the tests. I do want to know the framework of what is anticipated so that we can make sure that the Court approves of that, finds good cause for it, and so we know what is going to take place.
>
> We ask that only the Plaintiff be examined. That the Plaintiff is not deposed during the examination. That the Plaintiff is permitted to request breaks in the examination as needed and that a copy of the examiner's report be produced to Plaintiff's counsel. We're asking no later than 7 days following the examination. And so, if the Defendant's [sic] can show good cause and provide the Court and us with the information as to the type of testing that they want to do, meaning the names of the tests and how they anticipate this examination to be structured, then we would ask that the Court place certain parameters [on] this examination and the Defendant can go forward with that.

In response, Society confirmed that it was seeking a "noninvasive mental evaluation through an interview" conducted in a "manner customary of a forensic psychiatrist." The trial court admitted several exhibits into evidence under seal, including Doyle's expert report and Hobday's curriculum vitae. Society also offered into evidence, and the trial court admitted under seal, some of Doe's testimony from Dougherty's criminal trial and an excerpt from a police report. Society argued that these exhibits showed that Doe provided varying accounts of a previous sexual incident and that it should not have to rely on her "conflicting testimony" regarding the effect of this previous incident without its own "independent evaluation." In the two-page excerpt of the transcript from the criminal trial, Doe testified that a seventeen or eighteen-year-old relative exposed himself to her and she went to one counseling session regarding this incident. The excerpt from the police report appears to concern this same event.

5

Society contended that opposing counsel's suggestions that the examination might effectively constitute a deposition or that Hobday would re-traumatize Doe was "impugning the professionalism of an expert." Society stated that it could not agree to have an observer present during the examination because it could potentially invalidate the results of the examination. Society further argued that Society and Doe should be on the "same footing" with respect to the examination and noted that Doe had not provided it with prior notice that Doyle would be examining Doe or which tests Doyle planned to administer to Doe. Society pointed out that Doyle's examination had not been recorded or videotaped and Society did not have the opportunity to be present at that examination. Society also alleged that if it had to provide advance descriptions of the tests that were to be administered by Hobday, Doe might be "prepped or coached" for the examination, which would invalidate the exam as an analytical tool.

After extensive discussion,[6] the trial court requested that the parties provide letter briefs regarding whether Society should be required to disclose in advance the types of testing to be utilized for the examination and whether a third party could be present for the observation or whether a recording device such as a "video feed" should be utilized during the examination.

By letter brief filed on November 19, 2018, Doe's counsel requested the trial court to allow counsel to be present at the examination and to require Society to disclose the "anticipated tests to be performed during the mental examination" of Doe. Doe discussed

---

[6] The parties discussed, inter alia, whether this was an "independent" medical examination or a defense medical examination. Rule 204 does not utilize the term "independent." TEX. R. CIV. P. 204. Society conceded that there was "no disagreement on the fact that [it] is retaining this expert and that [it] is paying the expert." Society asserted that "substantively, we do need this examination to properly defend this case."

several conflicting cases regarding whether an attorney should be allowed to be present at an examination and asserted that counsel's presence was required in this case:

> Further, the court should consider the Plaintiff at issue in this case, who was raped by Defendant Dougherty, who was sponsored and promoted to the priesthood by [Society] and assigned to parishes in Texas and other dioceses in the United States [and] whom [Society] represented to others, including the public, as being a chaste and sexually safe and . . . moral role model for children. Plaintiff was 13 years old when she was raped by Dougherty. Dougherty has been sentenced to sixty years in prison due to his conduct.
>
> As noted by Plaintiff's expert, and contained in the report of Alexandria Doyle, Ph.D. (which was presented to the Court and placed under seal) regarding behavioral observations of the Plaintiff, Doyle stated, "Her thinking was somewhat slow and difficult to follow at times, and it appeared that she had to work hard to concentrate on the questions being asked." She goes on to state that, Plaintiff "was cooperative with all procedures although by the end of the evaluation, fatigue may have been a factor in her test responses." Plaintiff is a 20[-]year[-]old woman with an 11th grade education. She has struggled with learning difficulties in school that "became worse over time and she was classified as Special Ed". She experiences anxiety and panic due to the events made the basis of this case. She "has crying spells and generally feels emotionally overwhelmed and unable to problem solve." The [s]ymptoms of traumatic stress and a pervasive sense of vulnerability have negatively affected [her] functioning.
>
> Due to the Plaintiff and the events made the basis of this case, as well as the fact that this matter is an adversarial proceeding, Plaintiff's counsel should be allowed to be present in the room or by live video feed during the mental examination and/or a video camera placed on the Defendant's expert to record the mental examination.

Doe further argued that the trial court should require Society to provide notice regarding the types of tests to be performed at the examination and contended, in part, that it would violate her privacy rights not to be provided with this information.

On November 26, 2018, Society filed a letter brief in opposition to the requests made by Doe in her letter brief. Society's letter brief generally provided authority and argument in support of its contention that the trial court should deny Doe's requests.

7

On November 27, 2018, the trial court granted Society's motion to compel an examination of Doe under Rule 204.1. The court ordered Doe to submit to a medical examination by Hobday for a four-hour period, at a location to be agreed upon, and specified that the manner of examination would be "the usual manner of examination utilized by the doctor in conducting examinations to determine [the] extent, if any, of Plaintiff's injuries at issue in this case." The trial court's order defines the scope of the examination as "an independent mental evaluation by Dr. Gabrielle Hobday to determine the findings or lack thereof and the nature of Plaintiff's alleged injuries." The order requires Society to pay for the examination and traveling expenses for Doe and requires Society to produce a copy of Hobday's report to Doe's counsel. The specific provision of the order at issue here, interlineated in handwriting, states that the court "will allow for a video recording of the examination."

On December 7, 2018, Society filed a motion to reconsider the court-imposed video recording of the examination. Society extensively discussed case law supporting its position that to allow a third party to witness the examination, or even to allow the examination to be recorded, would significantly impact the results of the examination. Society's motion was supported by Hobday's affidavit, which provided in relevant part:

> My name is Dr. Gabrielle S. Hobday, MD, and I am over the age of eighteen, am of sound mind, and competent to make this affidavit. I am a medical doctor licensed in the State of Texas and am board-certified in Psychiatry and in Forensic Psychiatry by the American Board of Psychiatry and Neurology. I have been practicing medicine, and in particular in the field of Psychiatry, since the completion of my residency in 2008. Attached as Exhibit A is a true and correct copy of my Curriculum Vitae.

> I have conducted psychiatric evaluations in the capacity of a psychiatric expert on several hundred cases. These include the evaluation of competency to stand trial and criminal responsibility for the criminal courts, evaluations for federal employee disability cases, evaluations of

8

safety to practice and fitness of duty for professionals, evaluations involving boundary violations, medical malpractice expert review, evaluations of psychiatric damages in civil cases, guardianship evaluations and probate testamentary capacity assessments.

It is always my practice in conducting independent medical examinations for matters in litigation that such evaluations are conducted in a one-on-one setting with only myself and the examinee present. I do not allow these evaluations to be recorded and I do not allow the presence of third-party observers during the evaluations. In my experience and in my professional judgment, the presence of a third party or a recording device creates an atmosphere where the responses by the examinee are less forthcoming and less representative of the true mental state of the examinee. Accordingly, to order my evaluation of the Plaintiff to be recorded or to order the presence of a third party would, in my opinion, negatively impact the validity of my evaluation, and impair my ability to provide to the court the most accurate and true expert analysis and resultant conclusions.

I have reviewed the report of Alexandria H. Doyle, PhD, prepared for the above-referenced case. My review of her report does not indicate that Dr. Doyle's evaluation was recorded or witnessed by a third party. Ordering my evaluation to be recorded or witnessed by a third party would not provide me with the equal ability to evaluate the Plaintiff under the same circumstances as Dr. Doyle.

On December 12, 2018, the trial court held a hearing on Society's motion to reconsider. Hobday's affidavit, originally filed with the motion for reconsideration, was admitted into evidence under seal, as was Doyle's report. At the hearing, counsel for Doe decried Hobday's affidavit as "conclusory" and again argued for videotaping the examination to protect against potential improprieties and to provide a record of what was to transpire during the evaluation. Doe's counsel further asserted that "nobody has to know that there's a recording device in there" and we "don't have to have a camera that's setup that's . . . aimed down on everybody in there." According to her attorney, "[w]e can have something simple that's out of the way, that's unobtrusive [and] does this job." Doe's counsel asserted that videotaping the examination was not equivalent to having an

9

observer present and contended that Doe had been a victim of a crime who is "under tremendous stress."

The trial court denied Society's motion to reconsider on December 12, 2018.

This original proceeding ensued. By one issue, Society alleges that the trial court abused its discretion in ordering its expert psychiatrist to videotape Doe's examination. It argues that "the court's order, in the absence of evidence of special circumstances or good cause, is an abuse of discretion which places the adverse parties on unequal footing for which there is no adequate remedy by appeal."

The Court requested Doe, or any others whose interest would be directly affected by the relief sought, to file a response to the petition for writ of mandamus. *See* TEX. R. CIV. P. 52.2, 52.4, 52.8. Doe filed a response to the petition for writ of mandamus arguing that the trial court did not abuse its discretion in allowing the examination to be videotaped, and even if it did, Society has an adequate remedy by appeal to cure any alleged harm. The Court also received an amicus curiae brief in support of Doe's position filed by the Texas Association Against Sexual Assault (TAASA). *See id.* R. 11. And finally, Society has filed a reply to Doe's response.

## II. STANDARD FOR MANDAMUS RELIEF

To obtain relief by writ of mandamus, a relator must establish that an underlying order is void or a clear abuse of discretion and that no adequate appellate remedy exists. *In re Nationwide Ins. Co. of Am.*, 494 S.W.3d 708, 712 (Tex. 2016) (orig. proceeding); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding); *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992) (orig. proceeding). An abuse of discretion occurs when a trial court's ruling is arbitrary and unreasonable or is made

10

without regard for guiding legal principles or supporting evidence. *In re Nationwide*, 494 S.W.3d at 712; *Ford Motor Co. v. Garcia*, 363 S.W.3d 573, 578 (Tex. 2012). A trial court abuses its discretion when it fails to analyze or apply the law correctly or apply the law correctly to the facts. *In re Nationwide*, 494 S.W.3d at 712; *In re H.E.B. Grocery Co.*, 492 S.W.3d 300, 302 (Tex. 2016) (orig. proceeding) (per curiam).

We determine the adequacy of an appellate remedy by balancing the benefits of mandamus review against the detriments. *In re Essex Ins. Co.*, 450 S.W.3d 524, 528 (Tex. 2014) (orig. proceeding); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 136. In deciding whether the benefits of mandamus outweigh the detriments, we weigh the public and private interests involved, and we look to the facts in each case to determine the adequacy of an appeal. *In re United Servs. Auto. Ass'n*, 307 S.W.3d 299, 313 (Tex. 2010) (orig. proceeding); *In re McAllen Med. Ctr., Inc.*, 275 S.W.3d 458, 469 (Tex. 2008) (orig. proceeding); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 136–37. Mandamus "may be essential to preserve important substantive and procedural rights from impairment or loss, [and] allow the appellate courts to give needed and helpful direction to the law that would otherwise prove elusive in appeals from final judgments." *In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 136.

An order regarding a physical or mental examination under Rule 204 may be subject to review by mandamus. *See* TEX. R. CIV. P. 204. The Texas Supreme Court has concluded that mandamus is appropriate to correct the denial of an examination where the defense of the case "hinge[d] in large part on challenges to the nature, extent, and cause" of the plaintiff's injuries, those issues depended significantly on competing expert testimony, and the defense's expert required "the same opportunity" as the plaintiff's

11

expert "to fully develop and present his opinion, ensuring a fair trial." *In re H.E.B. Grocery Co.*, 492 S.W.3d at 304–05; *see In re Ten Hagen Excavating, Inc.*, 435 S.W.3d 859, 863 (Tex. App.—Dallas 2014, orig. proceeding). Further, rulings regarding Rule 204 examinations may be reviewed by mandamus when they violate the "fundamental fairness" doctrine or the "fair trial" standard. *See, e.g., In re Advanced Powder Sols., Inc.*, 496 S.W.3d 838, 851 (Tex. App.—Houston [1st Dist.] 2016, orig. proceeding); *In re Ten Hagen Excavating, Inc.*, 435 S.W.3d at 870; *see also In re Kirby Inland Marine, LP*, No. 01-18-00383-CV, 2018 WL 3468476, at *4 (Tex. App.—Houston [1st Dist.] July 18, 2018, orig. proceeding) (mem. op., per curiam).

Doe argues that mandamus relief is inappropriate and asserts that we should reject any argument that the trial court abused its discretion when making a discovery ruling on an issue that has not been clearly resolved by the relevant case law. However, a trial court has no discretion in determining what the law is or applying the law to the facts, even when the law is unsettled. *In re Shipman*, 540 S.W.3d 562, 565–66 (Tex. 2018) (orig. proceeding) (per curiam); *In re State Farm Lloyds*, 520 S.W.3d 595, 604 (Tex. 2017) (orig. proceeding). Thus, "[e]ven where the law is unsettled or the issue is one of first impression, a court may abuse its discretion if its legal decision is incorrect." *In re Silver*, 540 S.W.3d 530, 538 (Tex. 2018) (orig. proceeding); *see In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 135. Accordingly, we proceed with our review on the merits of Society's petition for writ of mandamus.

### III. RULE 204

Rule 204 of the Texas Rules of Civil Procedure governs court-ordered physical and mental examinations. *See* TEX. R. CIV. P. 204.1–.5. Under Rule 204.1, a party may,

no later than thirty days before the end of the applicable discovery period, move for an order compelling another party to submit to a physical or mental examination by a qualified physician or psychologist. *See id.* R. 204.1(a)(1). The party seeking the examination must show both (1) good cause, and (2) that the mental or physical condition of a party is in controversy or the party responding to the motion has designated a psychologist as a testifying expert or has disclosed a psychologist's records for possible use at trial. *See id*. R. 204.1(c)(1); *In re H.E.B. Grocery Co.*, 492 S.W.3d at 303; *Coates*, 758 S.W.2d at 752. These requirements may not be met with "conclusory allegations" in the movant's pleadings or by "mere relevance to the case." *Coates*, 758 S.W.2d at 751; *see In re H.E.B. Grocery Co.*, 492 S.W.3d at 303; *In re Click*, 442 S.W.3d 487, 491 (Tex. App.—Corpus Christi–Edinburg 2014, orig. proceeding); *In re Transwestern Publ'g Co.*, 96 S.W.3d 501, 505 (Tex. App.—Fort Worth 2002, orig. proceeding).

The purpose of the "good cause" requirement in Rule 204 is to balance the competing interests of the party's right of privacy and the movant's right to a fair trial. *See In re H.E.B. Grocery Co.*, 492 S.W.3d at 303; *Coates*, 758 S.W.2d at 753; *In re Click*, 442 S.W.3d at 491. In order to show good cause, the movant must establish that: (1) the examination is relevant to issues that are genuinely in controversy in the case and the examination would produce, or would likely lead to, relevant evidence; (2) a reasonable nexus exists between the condition in controversy and the examination sought; and (3) it is not possible to obtain the desired information through means that are less intrusive than a compelled examination. *See In re H.E.B. Grocery Co.*, 492 S.W.3d at 303; *Coates*, 758 S.W.2d at 751; *In re Transwestern Publ'g Co.*, 96 S.W.3d at 505; *In re Caballero*, 36 S.W.3d 143, 144 (Tex. App.—Corpus Christi–Edinburg 2000, orig. proceeding). There

13

must be a greater showing of need to obtain a physical or mental examination than to obtain other sorts of discovery. *In re Ten Hagen Excavating, Inc.*, 435 S.W.3d at 866 (citing *Schlagenhauf v. Holder*, 379 U.S. 104, 118 (1964)).

Rule 204 requires the trial court to determine "the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made." TEX. R. CIV. P. 204.1(d); *see also In re Sharaf*, No. 03-18-00671-CV, 2018 WL 5796977, at *3 (Tex. App.—Austin Nov. 5, 2018, orig. proceeding) (mem. op.) (concluding that the trial court abused its discretion by failing to specify the requirements for the examination). The trial court possesses discretion regarding the conditions for the examination. TEX. R. CIV. P. 204.1(d); *In re Offshore Marine Contractors, Inc.*, 496 S.W.3d 796, 803 (Tex. App.— Houston [1st Dist.] 2016, orig. proceeding) ("The length of Yohman's interview and the quantity and duration of neuropsychological tests to be administrated are matters for the trial court's discretion, which must be exercised by considering the fair-trial standard."); *see also In re Trimac Transp., Inc.*, No. 09–08–270–CV, 2008 WL 2758793, at *1 (Tex. App.—Beaumont July 17, 2008, orig. proceeding) (mem. op.) (stating that the trial court retains discretion to impose reasonable limits on the location for the examination and the scope of the examination). In exercising this discretion, the trial court may issue protective orders "in the interest of justice" and may order, inter alia, that "discovery be undertaken only by such method or upon such terms and conditions" as directed by the court. TEX. R. CIV. P. 192.6(b).

## IV. ARGUMENTS OF THE PARTIES

Society contends that there is a presumption that the presence of a recording device is neither necessary nor proper in a Rule 204 examination. It asserts that Doe, as

the party seeking the recording, had the burden to demonstrate "special conditions" or good cause for requesting that the examination be recorded, but introduced no evidence of either. Society contends that it, in contrast, offered "conclusive evidence" demonstrating that the presence of a recording device was improper and would destroy the validity of the psychological examination. Society argues that the trial court's action constitutes a clear abuse of discretion for which there is no adequate remedy on appeal because Society, in the "battle of the experts," will be required to defend itself in the lawsuit on an "uneven playing field," thereby depriving it of a fair trial. In support of these arguments, Society asserts that Texas courts consider case law interpreting Federal Rule of Civil Procedure 35[7] as instructive in interpreting Rule 204 and cites federal law in support of its contentions.

In contrast, Doe concedes that Texas Rule of Civil Procedure 204.1 and its federal counterpart "are silent as to whether a trial court can impose a condition requiring an independent psychiatric examination to be recorded by video." Doe asserts that federal courts do not uniformly prohibit the recording of psychological examinations and that several cases allow videotaping such examinations. Doe further contends that the recording is not equivalent to having a third-party observer, such as counsel, present at the examination because the recording device here will be "unobtrusive." Doe finally asserts that assuming—without conceding—that she was required to show good cause to obtain the recording of her examination, she has met this burden. She points out that this case involves allegations that Society's employee raped Doe as a child. Doe's

---

[7] *See* FED. R. CIV. P. 35(a)(2) (stating that an order requiring a party to submit to a physical or mental examination "must specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it").

counsel offered evidence of the trauma that she experienced in the form of her expert affidavit and expressly stated that the intent underlying the request for recording was to "make sure that she is not revictimized again." Doe asserts, in sum, that trial courts have discretion to determine the conditions of an independent medical examination and that this Court should not conclude that the trial court's decision "to make an exception to the usual practice for a rape victim" was done "without reference to guiding rules or principles."

## V. APPLICABLE LAW

In *Coates*, the Texas Supreme Court held that the federal courts' construction of the analogous federal rule was "helpful" to an analysis of our Texas rule. *Coates*, 758 S.W.2d at 751 (regarding former Rule 167a); *see also In re H.E.B. Grocery Co.*, 492 S.W.3d at 304. Under federal law, third-party observations and recordings of examinations are disfavored. *Ornelas v. S. Tire Mart, LLC*, 292 F.R.D. 388, 395–397 (S.D. Tex. 2013) (collecting cases); *Holland v. United States*, 182 F.R.D. 493, 495 (D.S.C. 1998) ("[T]he majority of federal courts have rejected the notion that a third party should be allowed, even indirectly through a recording device, to observe a Rule 35 examination."); *see also Jackson v. Harris Cty, Tex.*, 2019 WL 2544058, at *1, __ F.R.D. __, __ (S.D. Tex. June 20, 2019). This is because "[t]he introduction of a human or mechanical presence—whether a lawyer, a stenographer, a tape recorder, or other instrumentality—changes the nature of the proceeding." *Ornelas*, 292 F.R.D. at 397 (quoting *Tirado v. Erosa*, 158 F.R.D. 294, 299 (S.D.N.Y. 1994)).[8] The court in *Romano*

---

[8] Most courts analyze a request that an examination be recorded in the same manner that they evaluate whether to allow a third party to be present at the examination. *See Ornelas v. S. Tire Mart, LLC*, 292 F.R.D. 388, 396 (S.D. Tex. 2013); *Calderon v. Reederei Claus-Peter Offen GmbH & Co.*, 258 F.R.D. 523, 529 (S.D. Fla. 2009); *Favale v. Roman Catholic Diocese of Bridgeport*, 235 F.R.D. 553, 557 (D. Conn.

16

*v. II Morrow, Inc.* articulated the reasons for prohibiting the presence of third parties or recording or videotaping an examination:

> [A]n observer, a court reporter, or recording device would constitute a distraction during the examination and work to diminish the accuracy of the process. [An observer could] potentially distract the examining [physician] and examinee thereby compromising the results of the examination. Moreover, the presence of the observer interjects an adversarial, partisan atmosphere into what should be otherwise a wholly objective inquiry . . . . The Court finds that the presence of the observer would lend a degree of artificiality to the examination that would be inconsistent with the applicable professional standard.

173 F.R.D. 271, 273–74 (D. Or. 1997) (quoting *Shirsat v. Mutual Pharm. Co.*, 169 F.R.D. 68, 70–71 (E.D. Pa.1996)); *see Calderon v. Reederei Claus-Peter Offen GmbH & Co.*, 258 F.R.D. 523, 527 (S.D. Fla. 2009).[9]  And further, allowing an observer or recording subverts the purpose of the rule allowing examinations, which is to put both the plaintiff and the defendant on an equal footing regarding the evaluation of the party's medical or psychological status.  *Tarte v. United States*, 249 F.R.D. 856, 859 (S.D. Fla. 2008), *Favale v. Roman Catholic Diocese of Bridgeport*, 235 F.R.D. 553, 557 (D. Conn. 2006).  In other words—where one party has been examined by his or her doctors outside the presence of others or recording devices—the other party should be given the same equal opportunity.  *See Tarte*, 249 F.R.D. at 859; *Favale*, 235 F.R.D. at 557.

---

2006); *see*, *e.g.*, *Hertenstein v. Kimberly Home Health Care, Inc.*, 189 F.R.D. 620, 628 (D. Kan. 1999) ("Whether to allow a tape recorder or a third person at the examination of [the] plaintiff raises only a single issue."); *Holland v. United States*, 182 F.R.D. 493, 495 (D.S.C.1998) (considering the presence of "a professional videographer or court reporter, or even . . . an unattended videotape machine" as variations of the same issue, i.e. the presence of a "third party").

[9] We would note, as have some courts, that a compulsory examination with counsel selected and paid for by the opposing party is not inherently a neutral judicial proceeding but is instead part of the adversarial litigation process.  *See*, *e.g.*, *Di Bari v. Incaica Cia Armadora, S.A.*, 126 F.R.D. 12, 14 (E.D.N.Y. 1989).

Under the majority viewpoint, the party requesting the presence of counsel or seeking to record or videotape the examination has the burden to show a factual basis establishing special circumstances which constitute good cause for the accommodation. *Ornelas*, 292 F.R.D. at 396; *see, e.g., Ren v. Phoenix Satellite Television (US), Inc.*, 309 F.R.D. 34, 36 (D.D.C. 2015) (stating that "the typical procedure is not to create a recording of the examination" absent "a showing of specific need"); *J.H. v. Sch. Town of Munster*, 38 F.Supp.3d 986, 989 (N.D. Ind. 2014) ("In this case, Plaintiff has not identified any basis that would persuade the Court to order that the examination be video recorded."); *Stefan v. Trinity Trucking, LLC*, 275 F.R.D. 248, 250 (N.D. Ohio 2011) ("Federal courts have determined that third parties—whether human or electronic—cannot sit in on physical and mental examinations under Federal Civil Rule 35 unless special circumstances require it. These circumstances, however, must be balanced against the interests of the parties involved in the litigation."); *Morrison v. Stephenson*, 244 F.R.D. 405, 407 (S.D. Ohio 2007) ("In short, Ms. Morrison has simply presented no evidence that any of the facts and circumstances of this case differ from the ordinary case and require the Court to attach, as a condition to the examination, a directive that a recording device be made available."); *Favale,* 235 F.R.D. at 557 (refusing to allow the recording of an examination because the plaintiff had not shown "special circumstances" supported by specific facts constituting good cause); *Holland*, 182 F.R.D. at 496 ("Plaintiff has not demonstrated that compelling circumstances exist that could mandate recordation of the Rule 35 examination."); *see also Jackson*, 2019 WL 2544058, at *2 (stating that the movant must persuade the court that recording is "necessary").   Thus, the party seeking to record or videotape an examination bears the burden of showing special circumstances, unique to that party's

18

situation, supported by specific facts, that distinguish the case from others in which examinations are sought. *See*, *e.g.*, *Ornelas*, 292 F.R.D. at 397; *Favale*, 235 F.R.D. at 557. Courts have found that good cause for recording or videotaping an examination may be shown by various special circumstances, including for instance, where the examinee is a minor, does not speak the relevant language, or suffers from a disability that might impair his or her ability to communicate to counsel what occurs during the examination, or where evidence otherwise suggests that recording would be advisable. *See*, *e.g.*, *Schaeffer v. Sequoyah Trading & Transp.*, 273 F.R.D. 662, 664 (D. Kan. 2011) (allowing recording because, among other reasons, "plaintiff ha[d] a lengthy history of serious mental issues," and the court had serious doubts "as to whether plaintiff [would] be capable of providing any assistance to his attorney in understanding what took place during the examination"); *Greenhorn v. Marriott Int'l, Inc.*, 216 F.R.D. 649, 654 (D. Kan. 2003) (allowing tape recording of the examination because the plaintiff produced evidence that the examining physician was "abusive and ha[d] a 'predilection for ignoring court orders imposing conditions upon his examinations'" and had previously been disqualified from several cases); *Di Bari v. Incaica Cia Armadora, S.A.*, 126 F.R.D. 12 (E.D.N.Y. 1989) (allowing a stenographer to be present at a psychiatric examination where it appeared that plaintiff, who was not fluent in English, would have difficulty communicating with his attorney); *see also Maldonado v. Union Pac. R.R. Co.*, No. 09–1187–EFM, 2011 WL 841432, at *3 (D. Kan. Mar. 8, 2011) (relying on the fact that the plaintiff, who "ha[d] a third-grade education and [wa]s a non-English speaker," suffered from impaired memory and cognitive abilities, "thus impairing his ability to communicate to his counsel what occurred during the examination," in finding the recording warranted);

19

*T.B. ex rel. G.B. v. Chico Unified Sch. Dist.*, No. CIV S–07–0926–GEB–CMK, 2009 WL 837468, at *2 (E.D. Cal. Mar. 26, 2009) (allowing recording of an autistic child's examination upon the examining physician's request because "with traumatized children, a child's facial expressions, body language, movements and behavioral enactments communicate medically significant information which can be captured on videotape" and there was "no indication in this case that the unobtrusive use of a video camera will make the examination of plaintiff adversarial").

In contrast, in accordance with the requirement for special circumstances or a compelling need, generalized concerns about accuracy, reliability, and methodology for the examination do not constitute good cause for recording. *Ornelas*, 292 F.R.D. at 397; *see also Jackson*, 2019 WL 2544058, at *2. Thus, good cause for recording an examination is not established by the inherently adversarial nature of the examination, the fact that the examining physician was selected or paid for by opposing counsel, the theoretical potential for misconduct during the examination, the desire to obtain an accurate, dispute-free version of what was said, or the fear that the examination would become a de facto deposition. *See*, *e.g.*, *Hertenstein v. Kimberly Home Health Care, Inc.*, 189 F.R.D. 620, 629–31 (D. Kan. 1999).[10]

---

[10] Cases which require compelling reasons or exceptional circumstances to allow third-party observers or recording an examination consider that many of the rationales offered in support of these measures can be addressed through other means. *See*, *e.g.*, *Smolko v. Unimark Lowboy Trans., LLC.*, 327 F.R.D. 59, 63 (M.D. Pa. 2018) (stating that "to the extent that these concerns exist there are other, less drastic means of addressing them"); *Tarte v. United States*, 249 F.R.D. 856, 859 (S.D. Fla. 2008) (noting that there are "safeguards" other than third-party observers for plaintiffs who submit to examinations). For instance, the trial court can exclude from evidence any statements made by the examinee to the examiner relating to irrelevant matters or exclude any evidence regarding the exam that goes beyond the appropriate scope. Further, if there are concerns about the factual accuracy of the expert's examination or report, or any bias that the expert might have, the examinee's counsel can counter these concerns with the examinee's own testimony, testimony from that party's witnesses, and cross-examination of the expert. Ultimately, if there is a fundamental impropriety in how the exam is conducted, the trial court can exclude the evidence altogether or otherwise impose appropriate sanctions.

The foregoing federal authority requiring good cause or special circumstances for third party observations or recording an examination is consistent with Texas jurisprudence. While there is little Texas authority regarding recording or videotaping physical or mental examinations under Rule 204,[11] the Texarkana Court of Appeals has considered whether a plaintiff could be accompanied by her attorney during a physical examination. *See Simmons v. Thompson*, 900 S.W.2d 403, 403 (Tex. App.—Texarkana 1995, orig. proceeding).[12] In *Simmons*, the plaintiff in a personal injury suit regarding defective breast implants requested to have her attorney accompany her to the court-ordered physical examination. *See id.* The trial court denied her request and she filed a petition for writ of mandamus seeking to compel the trial court to set aside the order denying her request. *See id.* (discussing former TEX. R. CIV. P. 167a, now Rule 204).

---

[11] Texas cases that involve recording or videotaping examinations provide little discussion or analysis regarding whether an examination should be recorded or videotaped. *See, e.g., In re Commitment of Shoemaker*, No. 09-14-00239-CV, 2015 WL 2124987, at *2 (Tex. App.—Beaumont May 7, 2015, pet. denied) (mem. op.) ("We agree with the State that the Texas Rules of Civil Procedure do not mandate that the court require mental examinations to be videotaped."); *In re Freshpoint Dall., Inc.*, No. 05-14-00872-CV, 2014 WL 3557616, at *1 (Tex. App.—Dallas July 17, 2014, orig. proceeding) (mem. op.) (denying mandamus relief where "[r]elators have not established that the trial court has clearly abused its discretion in ordering that a videographer must be present during the independent medical examination of the real party in interest."); *In re Medina*, No. 01-07-00747-CV, 2007 WL 4279171, at *1 (Tex. App.—Houston [1st Dist.] Dec. 6, 2007, orig. proceeding) (mem. op.) (concluding that the trial court did not err in ordering physical examinations for the plaintiffs, but did err in ordering psychological examinations and noting, without discussion, that the trial court had "also ruled that no representatives of the Medina Plaintiffs could attend the examinations or videotape or audiotape the examinations"); *In re The Kansas City S. Ry. Co.*, No. 09-07-259CV, 2007 WL 1793758, at *1 (Tex. App.—Beaumont June 21, 2007, orig. proceeding) (mem. op., per curiam) (denying mandamus relief without discussion where the relator sought "to compel the trial court to remove a condition on an independent medical examination").

[12] A line of cases follows *Simmons* in the context of civil cases concerning sexual predator litigation. *See generally* TEX. HEALTH & SAFETY CODE ANN. §§ 84.001–.153 (codifying the civil commitment of sexually violent predators). These cases hold that the sexual predator act, which provides that a person subject to a civil commitment proceeding is entitled to the assistance of counsel, does not require the presence of counsel at the post-petition expert examination. *See, e.g., In re Commitment of Wirtz*, 451 S.W.3d 462, 469 (Tex. App.—Houston [14th Dist.] 2014, no pet.) ("We hold that under the circumstances of this case, Section 841.144(a) of the Act did not require the attorney's presence at the post-petition psychiatric examination."); *In re Commitment of Smith*, 422 S.W.3d 802, 805–07 (Tex. App.—Beaumont 2014, pet. denied) (concluding "that neither the . . . statute nor the Fourteenth Amendment require that counsel be present during a psychiatrist's post-petition examination.").

The plaintiff contended that the issue was "one of law rather than fact" and that she had an "absolute right as a matter of law to have her attorney present at the examination." *Id.* The Texarkana Court of Appeals held that the right to have one's attorney present at a court-ordered examination "is a matter to be determined within the discretion of the trial court on a case-by-case basis according to evidence showing a particularized need therefor." *Id.* The court denied relief because "relator has produced no facts showing a need for the presence of her attorney." *Id.*

As a preliminary matter, Doe asserts we should not apply the foregoing federal authority—which equates the presence of a third party at an examination with recording or videotaping the examination—to this case. In her response to the petition for writ of mandamus, she argues that this Court should reject Society's "attempt to demonstrate such an equivocation" on grounds it is contrary to the record. She reiterates the arguments that her attorneys made at the hearing on Society's motion for reconsideration, to wit, that "[n]obody has to know that there's a recording device in there" and that the recording device could be "something simple that's out of the way, that's unobtrusive." Doe's attorneys thus submit that the trial court properly rejected case law that equates what they term as a "secret recording" with the "obvious physical presence of a third party during an examination." Doe's counsel argues that Hobday's assertion that a recording device would render the examination less accurate "necessarily presupposes that the examinee was aware of the recording device—which—as discussed above—is not the case here."

Consistent with the majority of federal courts who have considered this issue, we see no need to apply separate rules to determine whether a third party can be present at

22

an examination or whether the examination can be videotaped or recorded. *See Calderon*, 258 F.R.D. at 529; *Favale,* 235 F.R.D. at 557; *Hertenstein*, 189 F.R.D. at 628; *Holland*, 182 F.R.D. at 495. The distinctions between allowing an observer to be present, or recording the examination, or the obtrusiveness of the recording device, may be factors to be considered in the overall analysis regarding good cause for the accommodation, but the distinctions are not determinative. And, even if we were to conclude otherwise, we question any suggestion that the examination could proceed without Doe's attorneys informing her that her psychological examination by Hobday would be videotaped. Videotaping Doe during a psychological examination performed for the purposes of litigation, without disclosing to her that the examination would be recorded, or the possibility and likelihood that the videotape would be viewed by third parties, presents fundamental problems pertaining to consent, privacy, and re-victimization. Although we need not further address this issue here, we are profoundly skeptical that proceeding in such a manner would comport with the rules of ethics and fiduciary responsibilities imbedded in the attorney-client relationship and the ethical and professional obligations of the examiner.

Based on the foregoing, we conclude that Doe must show special circumstances or a particularized need, as in *Simmons* and consistent with federal authority, supported by evidence including specific facts amounting to good cause, for video recording her examination. *See Simmons*, 900 S.W.2d at 403; *see also Ornelas*, 292 F.R.D. at 39. In this regard, we note that both federal courts and our Texas Supreme Court have emphasized the importance of allowing the moving party's expert the "same opportunity" as the opposing party's expert "to fully develop and present [her] opinion, ensuring a fair

23

trial." *In re H.E.B. Grocery Co.*, 492 S.W.3d at 304–05; *see Tarte*, 249 F.R.D. at 859; *Favale*, 235 F.R.D. at 557. Because Doe was examined by her expert without videotaping the examination, she should not require Society's expert to do otherwise in the absence of special conditions and a factual basis demonstrating good cause.

## VI. GOOD CAUSE

We determine, based on the record presented, whether Doe has met her burden to show special circumstances or a particularized need, unique to her situation, supported by specific facts, that provide good cause for allowing the examination to be videotaped. *See Simmons*, 900 S.W.2d at 403; *Ornelas*, 292 F.R.D. at 397; *Favale*, 235 F.R.D. at 557. Doe asserts that good cause is shown for videotaping Hobday's examination because her case does not arise out of a "routine" claim but instead involves allegations that relator's employee intentionally raped her as a child. Doe's attorneys assert that they are "reluctant to require her to participate in a one-on-one session with a person investigating her claims on [Society's] behalf without some guarantee of knowing what transpired," that they have "offered evidence of the trauma that she has experienced," and that they have "expressly stated the intent to 'make sure that she is not revictimized again.'" Doe contends that, given the "undisputed discretion that trial courts have when determining the conditions of an independent medical examination, this Court should not conclude that the trial court's decision to make an exception to the usual practice for a rape victim was done 'without reference to guiding rules or principles.'"

TAASA similarly asserts in its amicus curiae brief that in sexual abuse cases, such as the case at bar, "trial courts have a particular duty to take into account the unique needs of the sexual assault survivor." It argues that "the trial court made the sound

24

decision, firmly grounded in legal precedent and in public policy, that a sexual assault survivor should have the safeguard of a recording during her mental examination by the Relator's expert."

We appreciate the arguments made by Doe and TAASA regarding the nature of the injury at issue in this case, and we sympathize with the challenges and obstacles presented by the factual allegations presented here. However, we determine good cause for allowing the examination to be videotaped on a case-by-case basis according to evidence showing a particularized need, rather than by a categorical determination based on the underlying tort or cause of action, or the nature of the injury alleged. *See Simmons*, 900 S.W.2d at 403; *Ornelas*, 292 F.R.D. at 397; *Favale*, 235 F.R.D. at 557.

Doe asserts that recording is necessary to provide "some guarantee of knowing what transpired." However, without more, this rationale does not provide good cause for videotaping the exam. *See Ornelas*, 292 F.R.D. at 396 (rejecting a request for recording where the plaintiff requested an audio or video recording of his examinations based on "the Plaintiff's right to preserve evidence of the nature of the examination, the accuracy of the examiner's notes or recollections[,] and the tones of voice"); *Calderon*, 258 F.R.D. at 529 (rejecting the argument that "videotaping the [examination] will avoid discrepancies that may arise over statements made by Plaintiff during the examination in response to the examining physician's inquiries and reduce the prospective need for court intervention").

Doe further expresses concerns regarding whether Hobday will "revictimize" Doe or whether Hobday will improperly conduct the examination as a "de facto deposition." Doe's arguments are speculative in nature and are wholly unsupported by any evidence.

25

There is no factual basis, in this record, to assume that Hobday will terrorize Doe or turn the examination into a deposition. *See*, *e.g.*, *Greenhorn.*, 216 F.R.D. at 654 ("The court assumes that Dr. Stillings will exercise sound professional discretion in making such inquiries and will not pursue private information that is wholly unrelated to plaintiff's claims of injury and emotional distress."). Similarly, there is nothing in this record which would suggest that Hobday will not conduct an examination that is appropriate to Doe's specific mental health needs. We finally note that, fundamentally, an examination conducted for purposes of litigation, pursuant to the rules and under the direction of a court, should not be classified as a "revictimization." In this regard, we observe that Doe instituted the underlying litigation and placed her mental condition in controversy.

Finally, Doe has not alleged that she suffers a disability that would militate in favor of videotaping the examination or that she is unable to communicate with counsel regarding the content and procedure for the examination. Doe's counsel advised the trial court in her November 19, 2018 letter brief that, as discussed in Doyle's report, Doe had an 11th grade education, was classified as "Special Ed" in school, and was currently trying to obtain her GED. In this proceeding, however, Doe does not make any arguments that these matters necessitate videotaping the examination. And, there is no evidence or testimony in the record that these matters provide good cause for videotaping Doe's examination.

Utilizing the fair trial standard, and considering the specific facts presented in this case, we conclude that Doe has not shown good cause for videotaping the examination. Doe has not met her burden to show special circumstances or a particularized need, unique to her situation, supported by specific facts, that provide good cause for allowing

26

the examination to be videotaped. *See Simmons*, 900 S.W.2d at 403; *Ornelas*, 292 F.R.D. at 397; *Favale*, 235 F.R.D. at 557.[13] In this regard, Hobday has testified that she does not allow examinations to be recorded, that recording the examination would negatively impact the validity of her evaluation, and that ordering her examination to be recorded would not provide her with the same and equal ability to evaluate Doe under the same circumstances as Doyle. We note that these factual allegations in the record resonate strongly with the supreme court's directive to ensure that court-ordered examinations are conducted in such a manner as to ensure a fair trial. *See In re H.E.B. Grocery Co.*, 492 S.W.3d at 304–05 (concluding that the defense's expert required "the same opportunity" as the plaintiff's expert "to fully develop and present his opinion, ensuring a fair trial").

## VII. REMEDY BY APPEAL

We have concluded that the trial court abused its discretion by permitting Doe's examination to be videotaped. However, we will not grant mandamus relief if an appeal would provide a clear and adequate remedy. *See In re Nationwide Ins. Co. of Am.*, 494 S.W.3d at 712; *In re H.E.B. Grocery Co.*, 492 S.W.3d at 304. Doe asserts that Society has an adequate remedy by appeal to cure any alleged error in allowing the examination to be videotaped and that allowing the examination to be videotaped does not somehow "ring a bell that cannot be unrung." *See, e.g., Paxton v City of Dallas*, 509 S.W.3d 247, 261 (Tex. 2017) ("Once information has been disclosed, loss of confidentiality is

---

[13] Given our analysis here and the applicable burden of proof for allowing the examination to be videotaped, we need not address Doe's complaint that Hobday's affidavit is conclusory. *See Starwood Mgmt., LLC v. Swaim*, 530 S.W.3d 673, 679 (Tex. 2017) (per curiam) (stating that conclusory affidavits are not probative). Doe's sole argument offered in support of this contention is that Hobday "is attempting to convince this Court that she has personal knowledge of the nature of answers to questions that she has not asked yet" and such an assertion "is obviously conclusory."

irreversible. The bell cannot be unrung, and neither dissemination nor use can be effectively restrained."). Doe asserts that the ruling at issue does not severely compromise Society's ability to develop a defense to her claims, nor does it "deny this Court the ability to evaluate the effect of the trial court's error on appeal." Doe contends that if Society concludes that a recorded examination is insufficient to allow it to prepare for trial, "it can make an appropriate request to the trial court at that time." Doe further argues that Society "cannot possibly identify the harm from a recorded examination that has not yet occurred," and therefore, Society possesses an adequate remedy by appeal.

We determine the adequacy of Society's appellate remedy by balancing the benefits of mandamus review against the detriments. *In re Essex Ins. Co*., 450 S.W.3d at 528; *In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 135–36. Balancing the benefits against the detriments and examining the specific facts and circumstances of this case, we conclude that appeal is an inadequate remedy. *In re McAllen Med. Ctr., Inc*., 275 S.W.3d at 464 (stating that the cost-benefit analysis regarding the adequacy of a remedy by appeal "depends heavily on circumstances" and "must be guided by analysis of principles rather than simple rules that treat cases as categories"). Society's "defense in this case hinges in large part on its challenges to the nature, extent, and cause" of Doe's injuries, and these issues "in turn depend significantly on competing expert testimony." *See In re H.E.B. Grocery Co.*, 492 S.W.3d at 304. Society seeks to allow Hobday the same opportunity as Doyle to fully develop and present her opinion, ensuring a fair trial. *See id.* In this regard, Doyle's examination was not videotaped or otherwise recorded. Further, Hobday has provided explicit testimony that videotaping the examination would skew the examination and impair the accuracy of the results. The evidence presented in

28

this case suggests that the differing procedures or conditions on the examination will not provide the parties with equivalent discovery. We thus conclude that Society's ability to present a viable defense at trial is vitiated or severely compromised by the trial court's discovery error. *See id.* And, we would be unable to evaluate the extent to which Hobday's evaluation might be impaired or inadequate on appellate review. *See In re Ten Hagan Excavating, Inc.*, 435 S.W.3d at 864 (concluding that the denial of a request for an examination denied the appellate court "the ability to evaluate the effect of the trial court's error on appeal"); *see also In re Offshore Marine Contractors, Inc.*, 496 S.W.3d at 804. We conclude that Society lacks an adequate remedy by appeal.

## VIII. CONCLUSION

The Court, having examined and fully considered the petition for writ of mandamus, the response, and the reply, is of the opinion that Society has met its burden to obtain relief. Accordingly, we conditionally grant relief and direct the trial court to vacate its November 27, 2018 order allowing for the examination to be recorded by video and its December 12, 2018 order denying reconsideration of that order. Our writ will issue only if the trial court fails to comply.

LETICIA HINOJOSA
Justice

Delivered and filed the
23rd day of July, 2019.

29