**Affirmed and Memorandum Opinion filed August 6, 2019.**



In The

# Fourteenth Court of Appeals

## NO. 14-18-00167-CV

## IN RE COMMITMENT OF CEDRIC AUSBIE

**On Appeal from the 351st District Court
Harris County, Texas
Trial Court Cause No. 1302213-0101Z**

## M E M O R A N D U M   O P I N I O N

In this appeal from a final judgment and an order of civil commitment, a trial court found Cedric Ausbie is a sexually violent predator as defined in the Texas Health and Safety Code and subject to civil commitment. *See* Tex. Health & Safety Code Ann. §§ 841.001-.151 (Vernon 2017 & Supp. 2018). On appeal, Ausbie contends the evidence is legally and factually insufficient to "support a beyond-a-reasonable-doubt finding that Mr. Ausbie has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence." We affirm.

BACKGROUND

## I.  The Texas Civil Commitment of Sexually Violent Predators Act

The Texas Civil Commitment of Sexually Violent Predators Act (SVP Act) provides for the civil commitment of sexually violent predators based on legislative findings that "a small but extremely dangerous group of sexually violent predators exists and that those predators have a behavioral abnormality that is not amenable to traditional mental illness treatment modalities and that makes the predators likely to engage in repeated predatory actions of sexual violence."  Tex. Health & Safety Code Ann. § 841.001.  The Legislature expressly found that "a civil commitment procedure for the long-term supervision and treatment of sexually violent predators is necessary and in the interest of the state." *Id.*

Under the SVP Act, a person is a sexually violent predator if the person (1) is a repeat sexually violent offender, and (2) suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence.  *Id*. § 841.003(a).  Before the State files suit, a person must be administratively determined to be a sexually violent predator.  *Id*. §§ 841.021-.023; *In re Commitment of Bohannan*, 388 S.W.3d 296, 298 (Tex. 2012).  When the administrative determination is made, notice is given to an attorney representing the State.  Tex. Health & Safety Code Ann. § 841.023.

Once the person is referred to the State, an attorney representing the State may file a civil commitment proceeding in the court of conviction for the person's most recent sexually violent offense.  *Id*. § 841.041(a).  If a judge or jury determines that the person is a sexually violent predator, the trial court must commit the person for treatment and supervision to begin on the date of release from prison and to continue "until the person's behavioral abnormality has changed to the extent that the person is no longer likely to engage in a predatory act of sexual violence."  *See id*. §

841.081(a).

## II.    Ausbie's Trial

The State filed a petition alleging Ausbie is a sexually violent predator and requesting that he be committed for treatment and supervision. The case was tried in a bench trial in October 2017.

The State presented pen packets which showed Ausbie's convictions for two sexual offenses. Ausbie sexually assaulted a 16-year-old girl in 2004. Ausbie pleaded guilty to the offense of sexual assault of a child and was sentenced to two years' confinement. He was released in 2007. In 2011, he was charged with indecency with a child; the victim was a nine-year-old boy. He pleaded guilty and was sentenced to seven years' confinement in 2013.

The State presented two experts, who performed a clinical assessment of Ausbie, to testify concerning their opinion about whether Ausbie suffers from a behavioral abnormality: Dr. Sheri Gaines, a board-certified psychiatrist, and Dr. Timothy Proctor, a board-certified forensic psychologist.

Proctor testified he has been conducting evaluations with regard to behavioral abnormality for ten years and has conducted approximately 70 evaluations. Proctor relied on principles of forensic psychology in his evaluation of Ausbie and testified it was his opinion "Ausbie has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence." To form his opinion, Proctor stated he reviewed "the standard types of records in these cases," including police reports, victim statements, court documents, judgments, pen packets, "prison records that deal with summaries of him in his history, his behavior in prison, medical and psychiatric treatment in prison"; interviewed Ausbie face-to-face; scored the Static-99R instrument, which is an actuarial test; and reviewed the deposition of Gaines,

3

the deposition of psychologist Dr. Bauer, who conducted a multidisciplinary report and concluded Ausbie has a behavioral abnormality, the deposition of psychologist Dr. Mauro, who was asked to evaluate Ausbie's competency and concluded he was incompetent to testify at the commitment trial and also has a psychotic disorder which significantly impairs him, and the deposition of Ausbie which provided a "continued look" into his psychotic state.

Proctor explained that the records he reviewed are typically reviewed by experts to form an opinion if a person has a behavioral abnormality. He explained he relied on the data in these records because, in order to determine if Ausbie has a behavioral abnormality, Proctor has to know Ausbie's history, behavior, problems, and prior sexual offenses. Proctor testified that "[m]any of the commonly used risk factors in the research are based on the person's history and past. So, in understanding the person right now, it's important that we look back."

Proctor testified he met Ausbie in person at the Skyview unit in March 2017 but was unable to conduct a typical interview in length or scope because of Ausbie's level of impairment and severe mental illness. Proctor could not communicate with Ausbie and did not consider Ausbie at any point during the interview to be competent. Despite Ausbie's inability to communicate with Proctor, Proctor explained the interview was very important because he could observe "how impaired [Ausbie] is and how impaired his thinking is and his behavior is." Ausbie did not understand why Proctor was there and was "very distracted by things going on in his head"; it was difficult for Proctor to get Ausbie to respond to any questions and Ausbie got "a little bit agitated." Proctor diagnosed Ausbie with "a severe mental disorder called schizoaffective disorder that's a type of schizophrenia." Proctor stated that "a major driver in [Ausbie's] likelihood of committing predatory acts of sexual violence is his very disorganized thinking . . . and he has serious difficulty in

4

controlling his behavior. So, witnessing that firsthand was important and added to my evaluation."

Proctor testified he was unable to score Ausbie under the typical psychopathy checklist called P.C.L.R. because the instrument score is based in part on self-reporting and Ausbie could not provide any information because of his severe mental impairment. Although Proctor was unable to score the psychopathy checklist, he was able to determine that Ausbie's behavioral abnormality is "not driven by psychopathy or him being a psychopath." Proctor stated Ausbie has antisocial traits and a psychotic disorder but psychopathy is not "what's driving his sexual acting out behavior or what is driving this" behavioral abnormality.

Further, Proctor stated that, although "diagnoses" are not "required to find [Ausbie] has a behavioral abnormality," he diagnosed Ausbie with schizoaffective disorder and borderline intellectual functioning. According to Proctor, schizoaffective disorder relates to a finding of behavioral abnormality because the disorder impacts Ausbie's "ability to control his behavior and emotionally manage . . . his behavior. And in particular it deals with how his sexual deviancy comes out in his ability to control sexual deviant thoughts and urges." Proctor stated Ausbie's borderline intellectual functioning contributes to finding Ausbie has a behavioral abnormality because "this mental functioning . . . disinhibits him, impacts his decision making choices, emotional functioning, and then leads to the sexual deviancy manifesting itself."

With regard to the antisocial traits cluster of risk factors, Proctor testified he considered Ausbie's psychotic disorder and unstable relationship history. He also considered Ausbie's nonsexual criminal history as an antisocial lifestyle. Proctor testified Ausbie was charged with aggravated assault with a deadly weapon when he was 17 years old. A few months later, Ausbie was charged with aggravated assault

5

causing bodily injury for which he received and completed probation in December 2002. In 2003, Ausbie "was detained and taken to the psychiatric hospital after he jumped out in front of a car and was refusing to get off the car, even when the car started moving." In 2004, "there was a possession of marijuana charge he got some jail time for. Also a criminal trespass with some jail time in [20]04." Ausbie was also charged with public intoxication and criminal mischief before being charged with the 2004 sexual assault of a child and serving a prison sentence until 2011.

With regard to the sexual deviance risk factor, Proctor characterized Ausbie's sexual offenses as sexually deviant because "[o]ne, there's force in both of his sexual offense convictions. Additionally, his second victim was a prepubescent child" which "suggests the pedophilic urges and interests and possibly a pedophilic disorder."

Proctor explained that the details of Ausbie's two sexual offenses were important and allowed him to identify numerous risk factors relative to determining if Ausbie suffers from a behavioral abnormality, including (1) physical coercion during sex; (2) unrelated victim; (3) aggressive and agitated behavior; (4) persistence after punishment, which means "committing a sex offense after being sanctioned for a sex offense"; (5) age discrepancy between Ausbie and the victims; (6) one victim was a male; and (7) the boy was a stranger victim.

Proctor also testified that another factor he considered in forming his opinion was that Ausbie has a history of substance use problems that are currently "not active because he's in prison." Proctor testified Ausbie used "[c]ocaine, which is a stimulant; marijuana; P.C.P.; and other hallucinogenics, in particular ecstasy." According to Proctor, "[s]ubstance use is something that disinhibits" and "having a prior history of having a problem when in the free world with substance use is a risk factor for re-offense."

Based on the records he reviewed, Proctor also applied the Static-99R which is an actuarial test used to evaluate a sex offender's risk of recidivism. He scored Ausbie a "7"; "[t]his score puts him in the highest level, well above average risk" on the Static-99R. Proctor testified other evaluators scored Ausbie and similarly found him to be in the "well above average risk" category.

Proctor could not identify any protective factors to mitigate the numerous risk factors. Proctor concluded Ausbie suffers from a behavioral abnormality.

Gaines testified she has been a psychiatrist for 27 years and has evaluated approximately 125 people to assess whether in her opinion they have a behavioral abnormality. Gaines testified that, according to the statutory definition, "a behavioral abnormality is a congenital or acquired condition that affects one's emotional or volitional capacity and predisposes them to commit a sexually violent act such that they are a menace to society." In her opinion, Ausbie suffers from a behavioral abnormality.

Gaines explained that in evaluating Ausbie she reviewed "a lot of collateral information," conducted a face-to-face interview, and "used [her] knowledge and experience to formulate an opinion," which is the "accepted methodology" used by "psychiatrists in conducting these same evaluations in the State of Texas." Gaines stated she reviewed "lot of records including prison medical records, Sheriff's reports, witness reports," Proctor's deposition, Mauro's deposition, Bauer's multidisciplinary report and conclusion that Ausbie has a behavioral abnormality, and Ausbie's deposition.

Gaines explained that her records review and interview of Ausbie were both important in forming her opinion that Ausbie has a behavioral abnormality. She stated the "collateral information was important for facts and details. The face-to-face evaluation was important for [her] to evaluate Mr. Ausbie, be able to come up

7

with a psychiatric diagnosis, better understand his level of functioning, understand his thought processes, understand his psychiatric difficulties."

Gaines stated Ausbie's interview was shorter than typical because of his "low level of functioning" and his difficulty with new things, new people, a new routine, sitting still, and being asked questions. Gaines testified "Ausbie became so uncomfortable that he asked to terminate the interview and return to his cell." Although Gaines was not asked to evaluate Ausbie's competency, she concluded Ausbie was incompetent and did not really understand why she interviewed him.

To form her opinion that Ausbie suffers from a behavioral abnormality, Gaines testified she considered "his clinical presentation, which includes that inability to communicate factually, does contain many risk factors that are included in how I arrived at my opinion. His inability to tolerate stress, his inability to tolerate change, his lack of self-awareness, his lack of impulse control, all of those things are part of his psychiatric presentation that helped me come to my opinion."

Gaines also testified she diagnosed Ausbie with schizoaffective disorder, unspecified paraphilic disorder, antisocial traits, substance use disorder, and borderline intellectual functioning by using the DSM-5 (Diagnostic and Statistical Manual of Disorders), which is "usually relied upon by psychiatrists in making . . . conclusions about behavior abnormality." According to Gaines, "[s]omeone with a schizoaffective disorder has psychosis, either auditory hallucinations, delusions, something that is out of touch with reality." And there "is a mood component" to the disorder with symptoms of depression. Gaines testified "[t]he psychotic part of the diagnosis was clear to observe" during her interview of Ausbie because he was "clearly out of touch with reality." Gaines confirmed the mood component by reviewing records, which showed Ausbie had periods of depression and mania with impulsivity and aggression.

Gaines stated she reviewed Sheriff's records, district attorney's records, court records, and victim statements to diagnose Ausbie with unspecified paraphilic disorder which is "a disorder where there is [sic] deviant sexual thoughts, deviant sexual behaviors, and those things are interfering with someone's life. It is a very nonspecific diagnosis" because Ausbie committed sexual offenses against a male child victim and a female adolescent victim. Gaines stated Ausbie had no recollection of the two sexual offenses he committed and she did not question him long about them during the interview because Ausbie "was on the verge of an aggressive outburst."

Gaines described Ausbie's two sexual offenses in detail and stated the facts of the offenses were important to her forming an "opinion that he has a behavioral abnormality that makes him likely to engage in predatory acts of sexual violence in the future." Based on the details of the offenses she could "identify the factors that are discussed in the literature." She considered the offenses to be violent because they involved physical force, "involved pushing people, punching people, ripping people's clothes off, all of which are violent acts." Gaines opined Ausbie is a sexual deviant because he committed "forceful unwanted sexual acts against" a 16-year-old girl and a nine-year-old boy. She also opined "Ausbie's emotional volitional capacity [has] been affected to the extent that it predisposes him to commit a sexually violent offense so that he is a menace to the health and safety of another person."

Gaines further stated that records show Ausbie never participated in sex offender treatment programs because he was not "stable enough psychiatrically." Gaines testified that in her experience and "the literature shows that completing sex offender treatment is helpful in reducing recidivism." Gaines testified that hypothetically, if "Ausbie were able to complete sex offender treatment and fall into those statistics, it would statistically help with decreasing recidivism." According

9

to Gaines, Ausbie takes antidepressants and antipsychotic medications to target psychotic features like auditory hallucinations, delusions, paranoia, illogical thought processes, disorganized behavior, aggression, impulsivity, and irritability. Ausbie has experienced psychotic episodes since he was about 17 years old and has taken antipsychotic medications since 2004, but none have been successful in treating his psychotic features.

Gaines explained Ausbie receives a lot of supervision on a daily basis because he is "extremely disorganized to the point that he is not able to take care of his activities of daily living such as showering, brushing his teeth, getting up, having a routine, a schedule." According to records, Ausbie has had compliance issues with taking his medications throughout his adulthood and is currently on "long-acting depot injectables."

In reaching her ultimate opinion that Ausbie suffers from a behavioral abnormality, Gaines identified many risk factors — with the two major risk factors being Ausbie's sexual deviancy and his antisocial personality traits. Gaines identified these additional risk factors: serious and persistent mental illness, physical violence in the commission of his offenses, a male and young child victim in one of his sexual offenses, a stranger victim, persistence after punishment, lack of sex offender treatment, substance use history, nonsexual crime history, lack of supervision upon a release from prison, lack of insight, lack of awareness, lack of coping skills, Ausbie's young age and the fact he has never been married.

Gaines testified she did not identify any protective factors to mitigate the numerous risk factors, such as completing sex offender treatment, "learning a lot from sex offender treatment, having a good solid discharge plan, and older age." Gaines testified it is "[n]ot typical at all" for someone to have "zero protective factors."

10

After considering the evidence presented, the trial court found Ausbie to be a sexually violent predator and signed a final judgment and order of commitment on October 3, 2017. Ausbie filed a motion for new trial arguing, among other things, the evidence is legally and factually insufficient to support the trial court's finding that Ausbie is a sexually violent predator. The motion for new trial was overruled by operation of law. *See* Tex. R. Civ. P. 329b(c). Ausbie filed a timely appeal.

**ANALYSIS**

Ausbie argues the evidence is legally and factually insufficient to "support a beyond-a-reasonable-doubt finding that Mr. Ausbie has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence."

## I. Standard of Review and Applicable Law

The commitment of a person as a sexually violent predator is a civil proceeding. *In re Commitment of Harris*, 541 S.W.3d 322, 327 (Tex. App.—Houston [14th Dist.] 2017, no pet.). However, because the SVP Act requires the State to prove beyond a reasonable doubt that a person is a sexually violent predator, we review the legal sufficiency of the evidence using the appellate standard of review for criminal cases. *Id.*; *In re Commitment of Mullens*, 92 S.W.3d 881, 885 (Tex. App.—Beaumont 2002, pet. denied) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). We consider the evidence in the light most favorable to the verdict to determine whether a rational factfinder could have found beyond a reasonable doubt the elements required for commitment. *Harris*, 541 S.W.3d at 327; *Mullens*, 92 S.W.3d at 885. The factfinder is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *See Harris*, 541 S.W.3d at 327; *Mullens*, 92 S.W.3d at 887.

Although factual sufficiency review has been abandoned in criminal cases, as

11

an intermediate appellate court with final authority over factual sufficiency challenges in civil cases, we perform a factual sufficiency review in SVP Act cases when the issue is raised on appeal. *Harris*, 541 S.W.3d at 327. "Under a factual sufficiency review, we consider 'whether a verdict that is supported by legally sufficient evidence nevertheless reflects a risk of injustice that would compel ordering a new trial.'" *Id*. (quoting *In re Commitment of Day*, 342 S.W.3d 193, 213 (Tex. App.—Beaumont 2011, pet. denied)). "'[W]e view all of the evidence in a neutral light and ask whether a jury was rationally justified in finding guilt beyond a reasonable doubt.'" *In re Commitment of Wirtz*, 451 S.W.3d 462, 464 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (quoting *In re Commitment of Gollihar*, 224 S.W.3d 843, 846 (Tex. App.—Beaumont 2007, no pet.)).

Under the SVP Act, a person is a sexually violent predator if he (1) is a repeat sexually violent offender, and (2) suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. Tex. Health & Safety Code Ann. § 841.003(a). A person is a repeat sexually violent offender if (as relevant here) the person is convicted of more than one sexually violent offense and a sentence is imposed for at least one of the offenses. *Id*. § 841.003(b). A behavioral abnormality is defined as "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *Id*. § 841.002(2). A predatory act is defined as "an act directed toward individuals, including family members, for the primary purpose of victimization." *Id*. § 841.002(5).

## II.    Sufficiency of the Evidence

Within his legal and factual sufficiency challenge, Ausbie presents three distinct arguments. We will address these arguments in turn.

## A.    Expert Opinions

First, Ausbie argues the experts' opinions in this case are unreliable and constitute legally and factually insufficient evidence because the experts relied on "hearsay information in records (mostly police reports)" and "some prison records" to form their opinions about whether he suffers from a behavioral abnormality. Citing to *Coastal Transport Company v. Crown Central Petroleum Corporation*, 136 S.W.3d 227 (Tex. 2004), Ausbie argues "that he may for the first time on appeal challenge an expert's foundational data when the face of the record shows the unreliability of this foundational data." Ausbie specifically states, "An expert opinion based on what the face of the record shows to be unreliable hearsay falls within this category of challenges to an expert's foundational data that can be raised for the first time on appeal."

Contrary to Ausbie's assertion, *Coastal Transport* does not support his argument that he may for the first time on appeal challenge Proctor's and Gaines's foundational data as unreliable. The supreme court held that an objection in the trial court is required when "a challenge to expert testimony questions the underlying methodology, technique, or foundational data used by the witness." *Id*. at 229 "When a scientific opinion is admitted in evidence without objection, it may be considered probative evidence even if the basis for the opinion is unreliable." *City of San Antonio v. Pollock*, 284 S.W.3d 809, 818 (Tex. 2009). Ausbie did not object in the trial court to Proctor's and Gaines's expert testimony specifically challenging the reliability of their foundational data. He cannot do so for the first time on appeal. *See Pollock*, 284 S.W.3d at 818; *Coastal Transport Co.*, 136 S.W.3d at 229, 233.

We note that Ausbie made a hearsay objection to Proctor and Gaines testifying about the facts and details of his sexual assault of a child offense. However, under Texas Rule of Evidence 705(a), experts may disclose on direct examination, or be

13

required to disclose on cross-examination, the underlying facts or data upon which they relied; and they may discuss a defendant's prior offense as part of the basis for the experts' opinions. *See* Tex. R. Evid. 705(a).

Further, we reject Ausbie's contention that the experts' opinions in this case are unreliable because they were based on hearsay in the form of "mostly police reports" which Ausbie claims the Texas Court of Criminal Appeals "described . . . as 'inherently unreliable'". Ausbie cites to *Cole v. State*, 839 S.W.2d 798 (Tex. Crim. App. 1990) (op. on reh'g), to support his contention. But we find *Cole* inapposite. In *Cole*, the court rejected the State's attempt to introduce a chemist's report into evidence under the hearsay exception in Texas Rule of Evidence 803(8). *Id*. at 810. The court explained that the "items upon which the tests were performed were collected as part of investigating a crime, and the reports prepared by the DPS chemist were unquestionably a product of evaluating the results of that investigation . . . , and perhaps most importantly, the reports were not prepared for purposes independent of specific litigation, nor were they ministerial, objective observations of an unambiguous factual nature." *Id*. Here, Ausbie's commitment is a civil proceeding and not a criminal case; and the State did not attempt to introduce any reports into evidence. Additionally, even if the State had offered police reports into evidence, Rule 803(8) generally provides an exception to hearsay for police records offered into evidence in a civil case. *See* Tex. R. Evid. 803(8).

Accordingly, we reject Ausbie's first argument.

## B.     Serious Difficulty Controlling Behavior

Second, Ausbie contends the evidence is legally and factually insufficient to support a finding that he lacks volitional control or has serious difficulty controlling his behavior. In that regard, Ausbie contends the evidence "conclusively establishes that, even with his severe mental illness and all the other risk factors the State experts

14

said he has, [he] was able to control himself from committing sex offenses for approximately 99.9993% of the time he lived as an adult in the free world before going to prison."

The State presented testimony from experts Gaines and Proctor who opined that Ausbie suffers from a behavioral abnormality. They based their opinions on their interview with Ausbie, the thousands of pages of records they reviewed, the risk assessment they conducted, and the actuarial tests administered. Both experts testified numerous times that Ausbie lacks volitional control and has serious difficulty controlling his behavior.

Proctor for example testified that "a major driver in [Ausbie']s likelihood of committing predatory acts of sexual violence is his very disorganized thinking, that his behavior and his thinking are disorganized, and he has serious difficulty in controlling his behavior." Proctor testified Ausbie's schizoaffective disorder "impacts his ability to control his behavior and emotionally manage, you know, his behavior." Proctor also testified that Ausbie "has significantly impaired emotional and volitional capacity. His psychological and emotional functioning is impaired. His capacity to make decisions, control his behavior, is impaired. And that includes with respect in particular to sexual offenses." Gaines similarly testified that "Ausbie has serious difficulty controlling his sexual behaviors" based not only on the prior sexual offense convictions but on "his current behavior that demonstrates he continues to have trouble controlling his impulses."

Further, Ausbie's contention the evidence conclusively establishes he was able to "control himself from committing sex offenses approximately 99.9993% of the approximately 8 years he lived in the free world" is meritless. His calculation is incorrect in that Ausbie did not live 8 years in the free world after he committed sexual assault of a child in 2004. Ausbie claims he did not commit a sexual offense

15

between 2004 and 2011. But evidence shows he was not released from prison for his first conviction until May 2007 and committed indecency with a child in April 2011. Ausbie was therefore imprisoned for less than 4 years and "lived in the free world" for approximately 4 years before committing another offense.

As we have stated above, both experts testified several times that Ausbie lacks volitional control and has serious difficulty controlling his behavior. Ausbie's argument based on his flawed calculation does not constitute a challenge to Gaines's and Proctor's opinion that Ausbie has a behavioral abnormality. To the extent Ausbie attempts to argue that neither expert provided a percentage of how likely they believed Ausbie was to reoffend, the SVP Act "does not require a numerical or percentage statement of whether a person is 'likely' to reoffend." *See In re Commitment of Kalati*, 370 S.W.3d 435, 439 (Tex. App.—Beaumont 2012, pet. denied).

Accordingly, we reject Ausbie's second argument.

## C. Applicability of SVP Act

Third, Ausbie asserts the evidence is "insufficient also because it conclusively establishes that, according to the [S]tate experts, a 'major driver' of any behavioral abnormality that [he] may have is his severe mental illness which is treated by traditional mental illness modalities through various medications" and he should not be subject to civil commitment under the SVP Act. According to Ausbie, "[a]nother indication" that the SVP Act does not apply to him "is the provision in the trial court's commitment order placing [him] in the custody and control of the Health and Human Services Commission (HHSC) purportedly under Section 841.0835" when persons committed under the SVP Act have always been placed in the custody and control of the Texas Civil Commitment Office. Appellant claims that even the trial court "apparently believed" he should not be committed according to the provisions

16

of the SVP Act because it committed him "to the custody and control of HHSC to provide psychiatric services"; "[t]his further indicates that [he] should be subject to commitment under Chapter 574 of the Texas Health and Safety Code (which provides inpatient traditional mental health services to a mentally ill person) and not Chapter 841."

The SVP Act specifically provides for the civil commitment of sexually violent predators who have a "behavioral abnormality that is not amenable to traditional mental illness treatment modalities and that makes the predators likely to engage in repeated predatory acts of sexual violence." *See* Tex. Health & Safety Code Ann. § 841.001. Contrary to Ausbie's contention, Proctor and Gaines did not testify that Ausbie's severe mental illness is "a 'major driver' of any behavioral abnormality that [he] may have" and can be treated by traditional mental illness treatment modalities. In fact, there is no evidence in the record that Ausbie is amenable to traditional mental illness treatment modalities so that he should not be civilly committed under the SVP Act.

Additionally, Ausbie incorrectly claims the trial court's commitment order does not comply with Texas Health and Safety Code section 841.0835 and places him in the custody and control of the Health and Human Services Commission instead of the Texas Civil Commitment Office. The order almost verbatim tracks the language of section 841.0835 and states in pertinent part as follows:

> CEDRIC AUSBIE has this day been adjudged a **sexually violent predator** as defined in Section 841.003 of the Texas Health and Safety Code and has been **civilly committed** as such in accordance with Section 841.081 of the Texas Health and Safety Code. Therefore, the following commitment requirements in accordance with Section 841.082 of the Texas Health and Safety Code are necessary to ensure that CEDRIC AUSBIE complies with treatment and supervision, and to protect the community.

17

     *      *      *

  IT IS FURTHER **ORDERED** that the [Texas Civil Commitment] Office shall determine conditions of supervision and treatment for CEDRIC AUSBIE. The Office shall provide treatment and supervision to CEDRIC AUSBIE. The provisions of supervision must include a tracking service and, if determined necessary by the Office, supervised housing.

  IT IS FURTHER **ORDERED** that pursuant to Section 841.0835 of the Texas Health and Safety Code, the Health and Human Services Commission, after coordination with the Office, shall provide psychiatric services, disability services, and housing for CEDRIC AUSBIE due to his intellectual disability and mental illness that prevents CEDRIC AUSBIE from effectively participating in the sex offender treatment program administered by the Office until such time that said services are no longer necessary. This shall include psychiatric treatment, medication and counseling specifically designed for CEDRIC AUSBIE'S psychiatric needs, adding any services that are appropriate. If the office has determined that CEDRIC AUSBIE is unable to effectively participate in the sex offender treatment program because CEDRIC AUSBIE's mental illness prevents CEDRIC AUSBIE from understanding and internalizing the concepts presented by the program's treatment material, the Health and Human Services Commission shall provide inpatient mental health services until CEDRIC AUSBIE is able to participate effectively in the sex offender treatment program.

The trial court's commitment order complies with Texas Health and Safety Code section 841.0835. Ausbie's contentions are meritless. Accordingly, we reject Ausbie's third argument.

We conclude the evidence is legally sufficient to support the trial court's finding that Ausbie suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. *See Harris*, 541 S.W.3d at 329. We also conclude the evidence is not so weak that it "reflects a risk of injustice that would compel ordering a new trial." *See id*.; *see also Wirtz*, 451 S.W.3d at 466. We overrule Ausbie's first and second issues.

18

## CONCLUSION

We affirm the trial court's judgment and civil commitment order.

/s/       Meagan Hassan
               Justice

Panel consists of Justices Christopher, Hassan, and Poissant.